SAMUEL STEELE, Plaintiff in Error, v. WILLIAM HOBBS, Defendant in Error.

### ERROR TO HARDIN.

A. sold B. a mare for $70, and B. was to sell her in the fall, and if she brought less than that sum, A. was to make good the deficit; *without the fault of B.* the mare became worthless; he tendered the mare to A., and demanded a re-payment of the price paid for her: *Held,* that A. could recover, as so much money paid upon a consideration that had wholly failed.

THIS cause was tried before DENNING, Judge, and a jury, at August term, 1853, of Hardin Circuit Court.

WARREN & MONTGOMERY, for Plaintiff in Error.

J. A. LOGAN, for Defendant in Error.

TREAT, C. J.   This was an action of assumpsit, brought by Steele against Hobbs.   On the trial, the plaintiff introduced the following evidence : Elizabeth Steele testified that she heard a conversation between the parties in the Spring of 1851, concerning a mare ; plaintiff said $70 was too much for the mare, and if he bought her he would have to sell her again, as he was going to California in the fall, and she would not then bring $70 ; defendant said that plaintiff might take the mare at $70, and if she did not bring that amount in the fall, he would pay back the difference ; plaintiff said he would take the mare on that condition.   James Steele testified to the same conversation ; plaintiff intended to go to California in the fall, and wanted to take his money with him.   It was finally agreed between the parties, that plaintiff would take the mare at $70, and sell her in the fall for the best price he could obtain, and if she brought less than $70, defendant would refund the balance ; the witness discovered in a few days that the mare had the poll-evil, and during the summer she became entirely worthless, and could not have been sold for anything in the fall ; plaintiff took proper care of the mare, and used every effort to cure her.   Mills testified that the mare had the poll-evil in the summer of 1851, and was still badly afflicted with that disease ; plaintiff offered to sell the mare to witness in the fall of 1851, and witness would have paid a fair price for her if she had not been diseased ; plaintiff proposed to let witness have the mare for twenty-five cents, but he refused to take her on any terms.   Sims testified that he wanted to purchase a horse in the summer of 1851, and was referred to plaintiff; plaintiff was anxious to sell the mare, but witness considered her worthless, and declined to buy her.

Alexander Steele testified that the mare would not have sold for anything in the fall of 1851, or at any time since; plaintiff frequently offered to sell the mare; at one time the mare appeared to be getting better, and witness proposed to give plaintiff an old cow for her, but plaintiff would not have the cow. Barbour testified that the mare was badly diseased in the fall of 1851, and could not have been sold at any price. Walker testified that the mare could not have been sold for anything in the fall of 1851; she had a colt in the spring of 1852, now worth $15 or $20. Ralph testified that plaintiff returned from California in the spring of 1853, and in June following tendered the mare to defendant, and asked him to refund the amount paid for her; defendant refused to receive the mare, and repay the money. Warren testified that in 1851 he paid defendant $10 for plaintiff, and both parties said it was the balance due on the mare.

The defendant produced the following testimony: Matthews testified that he proposed to give defendant $60 for the mare, a short time before he sold her to plaintiff. Critchler testified that he told plaintiff in the spring of 1851, that he had paid a very big price for the mare, and plaintiff said it made no difference, as he had defendant bound to make it all right; the mare was badly diseased in the fall afterwards. Gilbert testified that early in the summer of 1851, he offered plaintiff $80 for the mare, if he would wait for the money, but plaintiff said he did not wish to sell her at that time, in that way. Jackson testified that he saw the mare in the summer of 1851, and did not notice that anything was the matter with her. Lemars testified that he saw plaintiff working the mare four or five times in the summer of 1851; she was badly afflicted with the poll-evil in the fall.

The jury returned a verdict for the defendant, and the court refused to grant a new trial.

The contract was that Steele should pay Hobbs $70 for the mare, and sell her in the fall for the best price he could obtain; and in case she then brought less than that sum, Hobbs should refund the excess. Steele accordingly advanced the money, and received the mare. The proof shows that he took reasonable care of the animal, and endeavored in good faith to sell her in the fall. But the mare in the mean time became entirely worthless without his fault, and it was therefore not in his power to effect a sale. He then tendered the mare to Hobbs, and demanded re-payment of the $70. Having performed the contract on his part, and offered to restore the property, he was clearly entitled to recover back the amount advanced to Hobbs, as so

much money paid upon a consideration that had wholly failed. The verdict of the jury was manifestly against the evidence, and the court erred in not setting it aside.

The judgment must be reversed, and the cause be remanded.

*Judgment reversed.*