# Agnew, Adm'r, *v.* Walden & Son.

*Action on Promissory Note.*

1. *Non-claim; description of claim on presentation or filing.*—To avoid the statute of non-claim (Code, §§ 2081-83), when pleaded to a promissory note, it is not necessary to show that the note itself, or a copy of it, was duly presented or filed, when it appears that the claim as filed was sufficiently described by identifying marks.

[Agnew, Adm'r, v. Walden & Son.]

2. *Note given to attorney on retainer; failure of consideration*—The retainer of an attorney, in a criminal case, devolves upon him the duty of rendering all the professional aid and service necessary and proper in the preparation and conduct of the defense, according to the general routine of such prosecutions, up to the trial and final judgment, or other termination of the case; and a note being given on such retainer in a case of homicide, the death of the maker by mob violence, before trial, does not constitute an 'entire failure of consideration, though admissible evidence as showing a partial failure.

3. *Issue on defective plea.*—When issue is joined on a defective plea, although the issue is immaterial, evidence which is relevant to it can not be excluded.

APPEAL from Cherokee Circuit Court.

Tried before Hon. JOHN B. TALLY.

On the trial the court refused to allow defendant, Agnew, to introduce any testimony tending to show failure of consideration of the note sued on, and set out in the opinion, and charged the jury that if they believed the evidence they must find for plaintiffs for the amount of said note with interest thereon.

MATHEWS & DANIEL and BRICKELL, SEMPLE & GUNTER, for appellant.

· J. L. BURNETT, *contra.*

STONE, C. J.—The present suit was brought on a bond, or note under seal, of which the following is a copy:

"$500.00. One day after date I promise to pay to Walden & Son or bearer five hundred dollars, and to secure the same I hereby waive all exemption or relief laws under the statutes and constitution of Alabama—said sum being retainer to said Walden & Son as my attys, in case of State of Alabama against me, charged with homicide. Witness my hand and seal this Oct. 9th, 1884.

J. R. DORSEY (Seal)."

When this note or bond was given Dorsey was in jail under a charge of murder. Soon afterwards, and before any trial was had, Dorsey came to his death by violence at the hands of a mob. On November 24, 1884, letters of administration on Dorsey's estate were granted by the proper court to Agnew, the appellant in the present case. This suit was commenced June 18, 1886, more than eighteen months after Agnew's appointment.

One of the defenses relied on was non-claim—that the claim was neither presented to the administrator, nor filed

in the office of the Probate Court, within eighteen months after the grant of letters of administration. This, if true, is a good defense under the statute. We think there is nothing in this defense. True, neither the claim itself nor a copy of it, was filed and left in the probate office. It was presented there, and the substance of it was put on record June 13, 1885. The entry on the record showed in whose favor the claim was filed—Walden & Son—against whose estate it was filed, J. R. Dorsey's—the amount, $500—date and time due, and that it was due by note. This was a sufficient description and identification, and sufficiently showed that Dorsey's estate was looked to for payment.—*Halfman v. Ellison*, 51 Ala. 543; *Smith v. Fellows*, 58 Ala. 467; *Bibb v. Mitchell, Ib.* 657; 3 Brick. Dig. 473-4.

The second defense relied on was, that there was a failure of consideration; that the contract contemplated that Walden & Son should defend Dorsey on his trial for murder; that they had not done so, and that, without fault on Dorsey's part, it was now rendered impossible that they could perform the services which were the inducement and consideration of the promise. This was pleaded and relied on in full defense of the action.

The note or bond on its face declares that said sum, five hundred dollars, was a retainer to said Walden & Son as Dorsey's attorneys in case of the State against him, charged with homicide. Retainer is "the act of a client by which he engages an attorney or counsellor to manage a cause, either by prosecuting it where he is plaintiff, or defending it when he is defendant."—Bouv. Law Dic.; Worcester's Dic.; Webster's Dic. "The engagement of a counsel or solicitor to take or defend proceedings, or to advise or otherwise act for the client."—Rapalje & Law. Law Dic. "A preliminary fee given to a counsel to secure his services, or rather, as it has been said, to prevent the opposite side from engaging them." Imp. Dic., Eng.

We apprehend that neither of these definitions is technically and universally correct. Much must depend on usage and custom, as the same may prevail in the particular locality or jurisdiction in which the contract is made. That there are two classes of retainers, by which the services of attorneys, solicitors, or counsellors are secured, is believed to be common, if not universal. First, general retainers. These have for their object the securing, beforehand, of the services of a particular attorney or counsellor, for any emergency

that may afterwards arise. They have no reference to any particular service, but take in the whole range of possible, future contention, which may render attorneyship necessary or desirable. Counsel thus retained is not at liberty to accept employment, or render service adversary to the interest of the client thus retaining him. He is, as to such client, monopolized.

A special retainer has reference to a particular case, or to a particular service. Such was the retainer in this case. It, however, imposes obligations, *pro hac vice*, equally binding with those enjoined by a general retainer. It forbids the acceptance of adversary employment, or the performance of adversary services. It exacts undivided loyalty and allegiance to the client, equal to that demanded by the veriest despot that ever scourged a people. In that particular service his talents and skill are not his own; they are bought with a price. These he must bestow with all the zeal and earnestness of his nature, and in all the methods which truth and honesty can sanction. The obligation hath this extent; no greater.

Under our system, and the usages and customs which prevail with the profession, we feel safe in saying that in the absence of qualifying terms, a retainer, such as was given and accepted in this case, imposes on the attorney the following duties and obligations:

He must accept no retainer from the opposite side, must give counsel whenever needed or called for, must acquaint himself with the case and its wants, must render all needed professional aid in the preparation of the defense, and must give his earnest unflagging attention and services to the trial when it comes, unless the prosecution is cut short in some such way as is mentioned further on. And in these several duties he must not relax in zeal, until there is a judgment in the trial court, or other termination of the prosecution.

Taking upon one's self so great duties, obligations and restraints as those enumerated above, surely presents some elements of consideration, which cut off the defense of total failure of consideration.—*Maull v. Vaughn*, 45 Ala. 134; *Hixon v. Hetherington*, 57 Ala. 165.

The present record presents something of an anomaly. The original complaint contained two counts, one special and one common. To this complaint the defendant filed four pleas on September 23, 1886. The fourth plea sets forth the facts recited above, as a failure of consideration, and as

a bar to the action. To this plea there was a demurrer assigning causes. On December 17, 1887, the plaintiffs, under the leave of the court, filed an additional count, describing the note or bond *in hæc verba*, and claiming the amount of the same with interest. To this amended complaint, and on the same day, the defendants pleaded six several pleas, the fifth of this series being, in every essential averment, a substantial copy of the fourth in the first series. On this day, December 17, 1887, the trial was had. The judgment entry recites that the court sustained the plaintiffs' demurrer to the fourth plea of the first series, and then proceeds as follows: "And issue being now joined upon the defendants' pleas this day filed to the original and amended complaint, thereupon came a jury," &c.

It will thus be seen that there were two pleas, essentially and substantially alike, to one of which a demurrer was sustained, while issue was joined on the other. Now, if we regard plea number four of the first series as faulty, and, as a consequence, the demurrer to it as rightly sustained, the inevitable corollary is that plea number five is equally bad, and tenders an immaterial issue. And issue having been taken on it, defendant should have been allowed to introduce testimony in support of it.—*Farrow v. Andrews*, 69 Ala. 96; *Mudge v. Treat*, 57 Ala. 1. The Circuit Court erred in rejecting testimony in support of plea five of the second series.

Do the facts show there was a partial failure of consideration?

We have summarized above the duties and services the plaintiffs undertook to perform for their client, when they accepted his retainer. The bond should be read as if it expressed these implications on its face. It is manifest that, without any fault on the part of the client, these services have been performed only in part, and that they never can be performed more fully. The agreed compensation was what each contracting party admitted and consented was the equivalent of all the services they would or could render in the defense they undertook to conduct, and we must suppose the general routine in such prosecutions was expected and had in contemplation. Executory contracts are entered upon with reference to the ordinary current of events. Abnormal results are neither anticipated nor provided against. Should they not, when they do occur, be considered in the interpretation? A mechanic is employed to make repairs, and either

enters, or is ready to enter upon the performance of his con-
tract. Without fault of either contracting party, fire, or
some other causalty destroys the subject of the contemplated
repairs, and renders performance impossible for all time.
And, to make the illustration completely pertinent, we may
h pothesize that the fire is incendiary. What are the rights
au l liabilities of the contracting parties? Can the employer
hold the contractor responsible for not doing the impossible,
or, can the contractor recover for the work he has not done,
and has been rendered incapable of doing, by no fault of
the employer? And is an attorney's services different from
any other skilled laborer's, the conditions being similar?
We might extend these illustrations further. We subjoin
authorities which support the line of argument we have been
pursuing.—*Stewart v. Loring*, 5 Allen, 306; *Walker v.
Tucker*, 70 Ill. 527; 3 Wait Act. & Def. 606; 7 *Ib.* 360;
*Blodgett v. Berlin Mills*, 52 N. H. 215; *Steele v. Hobbs*,
16 Ill. 59; *Hubbard v. Belden*, 27 Vt. 645; *Hillyard v.
Crabtree*, 11 Tex, 264.

The case of *Walker v. Clay*, 21 Ala. 797, is not opposed
to these views. In that case it was not shown that the ser-
vices of the attorney could not be rendered at some future
time, and would not be called for. Performance had not be-
come impossible, as in this case. The real point was,
whether by the terms of the contract the performance of the
services had been made a condition precedent to the right to
demand the fee. It was rightly ruled that it had not.

The testimony offered ought to have been received, as
tending to prove partial failure of consideration.

Compensation in this case should not be scaled down to a
mere equivalent for the actual services shown to have been
rendered. The fact that the plaintiffs disabled themselves
to accept a retainer on the opposite side is itself a consider-
ation. The magnitude of the issue, and the responsibilities
attendant upon such service, should be considered. And the
consultation and counsel presumed to have been had and
given at the time of the retainer, and possibly other things,
must enter into the estimate.

We must not be misunderstood. The retainer contem-
plates only the services that may become necessary in the
progress of the prosecution. Should there be a failure to
find a true bill, a *nol. pros.*, or other termination, short of a
verdict in the cause, this, in the absence of stipulations,
would furnish no ground of defense to the action for the

[Liddell v. Chidester.]

agreed fee. It would present no question of a failure of consideration; for, in such case, the attorney would have performed all the duties his contract required him to perform. Such possible result must be presumed to have been had in contemplation.

In the rulings on testimony, and in the charge given, the Circuit Court erred.

Reversed and remanded.