[No. 1575.]

R. KIRMAN, APPELLANT, *v.* CLARA A. POWNING, AS
ADMINISTRATRIX OF THE ESTATE OF C. C. POWNING,
DECEASED, RESPONDENT.

ESTATES OF DECEASED PERSONS—CLAIMS—PRESENTATION OF MORTGAGE—
FORECLOSURE. A mortgage upon the lands of a decedent may be
foreclosed whether a claim thereon has been filed against the estate
under the provisions of Compiled Laws of 1900, secs. 2893–2896, or
not, the only effect of a failure to file such claim being the preven-
tion of the mortgagee from making any deficiency that might
remain after exhausting the mortgaged property, out of the
remainder of the estate.

IDEM—IDEM—MORTGAGE—LIEN—FORECLOSURE. A mortgage is something
more than a "claim against the deceased." It is a lien upon the
specific property described therein, carrying with it the right, in
case of default, of action to foreclose, and by such proceedings have
applied to its discharge the proceeds arising from the sale of the
specific property.

IDEM—IDEM—IDEM—IDEM—DISTRICT JUDGE—JURISDICTION. The district
judge acting in probate matters under the sections above cited has
no power or authority to determine the question of the validity or
invalidity of the lien of the mortgage, or to make any decree or
order for the sale of the mortgaged premises upon the presentation
of the claim as defined in the statute. His allowance or rejection
of the claim does not determine the validity of the lien created by
the mortgage.

IDEM—IDEM—IDEM—SALE OF MORTGAGED PROPERTY—LIEN WHEN
DIVESTED. The legislature, by the use of the words "valid claim
against the estate of the deceased," construed with the other lan-
guage used in the same section (Comp. Laws, sec. 2943), clearly
intended that lands sold by the administrator, which were justly
chargeable with the payment of a mortgage lien, should be subject
to sale divested of such lien only upon the actual application of
the proceeds as specified.

IDEM—IDEM—STATUTORY CONSTRUCTION—"MAY" AND "SHALL." The words
"may" and "shall," in the last clause of section 2896 of Compiled
Laws reading: "If the claim be founded upon a bond, bill, note, or
other instrument, the original instrument need not be filed, but a
copy with all indorsements *may* be attached to the statement of a
claim and filed therewith, and if the claim be secured by mortgage
or other evidence of lien, it *shall*, or a certified copy from a record,
be attached to the claim and filed therewith," are directory. Under
said section a claim, or statement of a claim, properly verified,
which shows the nature and character and amount of the same,
and the liability of the estate of the decedent, and, if there is
future litigation as to the fact of its presentment, it can be distin-
guished from all other similar claims, and is sufficient to bar
another proceeding upon it, is sufficient when said section is given
the liberal construction required by Compiled Laws, sec. 3055. It is
shown by the complaint that the statement of the claim filed

within the statutory time was allowed by operation of the original provisions of section 2896, *supra*, by the failure of the administratrix to endorse her allowance or rejection of the same. (Stats. 1897, p. 136.) It is further shown that thereafter the appellant appeared before the district judge, and before said claim had been rejected by him, and offered to attach the original note and mortgage to the statement of the claim, and left said note and mortgage with the said district judge for the purpose of having the same attached: *Held*, that, under Compiled Laws of 1900, sec. 3067, providing that when appropriate, or the same may be applied as auxiliary to the provisions of the act, and when not otherwise especially provided in the act, all the provisions of the law regulating proceedings in civil cases shall apply in matters of estates, claimant had a right to have his claim amended as requested, and that the leaving of the note and mortgage with the judge under the circumstances constituted an amendment of the same.

## On Petition for Rehearing.

Estates of Deceased Persons—Statutory Construction—Act Adopted from Sister State. The act of 1897, regulating the settlement of estates of deceased persons, is copied mainly from the code of civil procedure of California, title II. The California law does not contain the statutory rule of construction found in section 269 of an act (Comp. L. 1900, sec. 3055), that it shall be construed liberally. Section 2909, Compiled Laws, invalidates any sale of property of a decedent, unless made under order of the court, except as otherwise provided in this or other acts, while the corresponding section of the California code (sec. 11,517) limits the exception to the provisions of that act. Sec. 11,569 of the California code of civil procedure regulates the application of money derived from a sale made by an administrator of property subject to mortgage or other lien which is a valid lien against the estate and has been presented to the administrator and allowed, while the corresponding section in the Nevada act (sec. 2943, Comp. Laws) omits the requirement of presentation and allowance: *Held*, that the difference between the two statutes was such that the construction placed on the California statute by the courts of that state is inapplicable in Nevada.

Statutes—Construction. In construing statutes the court will look to the statutes and the language used therein, in order to ascertain the true meaning and intent thereof.

Appeal from the Second Judicial District Court, Washoe County; *B. F. Curler*, District Judge.

Action by R. Kirman against Clara A. Powning, as administratrix of the estate of C. C. Powning, deceased. From a judgment sustaining the demurrer to the complaint, plaintiff appeals. Reversed. Rehearing denied.

The facts sufficiently appear in the opinion.

*Alfred Chartz*, for Appellant:

I.   The administratrix allowed the claim by statutory limitation.   At the time she acted upon the claim the law was that if she failed to act within a certain time, that the claim would be construed as allowed.   (Sec. 111, Stats. 1897.)

II.   Could the claim as presented be amended, and was the amendment proposed in time?   Any pleading can be amended at any time before judgment, unless the other side would be prejudiced thereby, and a showing to that effect must be made by the party prejudiced, and the costs of amendment and penalties thereof will be imposed on the party amending.   When plaintiff offered to attach the original note and the original mortgage to the claim as filed, he simply proposed to amend the same by attaching such original note and original mortgage to the claim as filed, and such motion was made before final judgment, because the action of the judge or administratrix in allowing or rejecting a claim is a final judgment, for the reason that when a claim is allowed it becomes a judgment in favor of the claimant. So, the submission of the original note and mortgage to be attached to the claim was the submission of an amendment, and it was made before final judgment.   The court says:   "If the offer had been made prior to the expiration of the time for the filing of claims, their attachment might have been considered as an amendment and the situation would have been entirely changed."   Under  this  ruling,  if  a  person brought suit on a note the day before it would outlaw, he could never amend his complaint, because the amendment would not be proposed in time.   The error into which the court fell is thus plainly illustrated by its own decision. *   *   *   " We see no reason why claims cannot be amended the same as other pleadings."   *Wolf* v. *Wilsey*, 2 Ind. App. 561; *Dayton* v. *Dakins*, 61 N. W. Mich. 349; *Estate of Hidden*, 23 Cal. 363.)

III.   Section 269 of the probate act of 1897 says:   "This act shall be liberally construed, to the end that justice may be done all parties."   Under our practice act, all errors which do not affect the substantial rights of the parties may be disregarded, and amendments may be allowed at all times in furtherance of justice.   Section 2310 of the Revised Statutes

of Indiana is even stronger than ours. It calls for a copy of the lien, and also the record where it is to be found. Yet the Supreme Court of Indiana say: "Thus it has been held again and again that the statement contemplated by the statute is sufficient if it apprises the administrator of the nature of the claim, the amount demanded, and contains sufficient substance to bar another action for the same demand." (2 Ind. App. 559; 84 Ind. 272; 52 Ind. 490; 43 Ind. 271; 13 Ind. 206; 125 Ind. 398; 122 Ind. 348; 1 Ind. App. 58, 339; 126 Ind. 461.)

IV.   It has heretofore been held that the affidavit could not be amended, the courts being very strict as to affidavits. But the legislature of 1899 passed an act permitting the amendment of affidavits. Can it be claimed that, under our statute, affidavits may be amended, and the statement itself cannot be? There exists far greater reason to permit the amendment of the statement of the claim than to permit the amendment of the affidavit. The matters stated in the affidavit, that no part of the claim has been paid, and that there are no offsets to the claim, are matters that repose entirely within the bosom of the claimant, while the statement itself may be a matter of common knowledge. In the case of *Wolf* v. *Wilsey*, 2 Ind. App. 561, an amendment to the statement was allowed when the case stood for trial.

V.   Can an action be maintained to foreclose a mortgage on the property of a deceased person without first presenting the claim to the administratrix of the estate and probate judge for allowance? "By the great weight of authority," say the editors of the Am. & Eng. Enc. of Law (vol. 8, p. 1070), "a mortgagee may enforce his lien without presentation of his claim." The theory of these decisions seems to be that only the equity of redemption in the mortgaged premises is assets of the estate, and that the statute of non-claim bars the remedy merely, and does not discharge the debt. In some states, however, it is held that the mortgage lien is lost by failure to present the claim. These decisions are generally based on the principle that the mortgage creates merely a lien on the property, the property still remaining a fund for distribution amongst the creditors. The latter view is upheld by California, Texas and Florida,

and the former is maintained by Alabama, Arkansas, Colorado, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Mississippi, Missouri, New Jersey, Oregon, Ohio, Pennsylvania, South Dakota, Vermont, Washington, Wisconsin and other states. In short, every state in the Union has statutes equally strong as ours barring out *all* claims not presented according to notice, and several of them forbid their being set up as a set-off. But the decisions are innumerable which say that a note secured by mortgage is not such a claim. (See authorities cited at page 1070, vol. 8, Am. & Eng. Enc. Law, *et seq.;* 37 Ind. 141; 68 Ind. 378; 78 Ind. 417; 67 Ind. 542; 30 Ind. 94; 98 Ind. 499; 1 Ala. 708; 2 Ala. 231; 44 Ala. 92; 67 Ala. 192; 80 Ala. 296; 38 Mich. 96; 32 Mich. 156; 26 Wis. 385; 23 Pac. (Wash.) 439.)

VI. " In an action to foreclose a mortgage after conveyance of the mortgaged premises, and the death of the mortgagor, when no judgment against the estate of the latter is asked for, it is unnecessary for the mortgagee to present the note and mortgage to the administrator of such estate for allowance." (*Rickards* v. *Hutchinson,* 18 Nev. 215.) The principal point decided by the case, and principal reason advanced, is found in this language: "As the respondent does not ask any judgment against the estate." In the case at bar, C. C. Powning, in his lifetime, carved out of his estate, and out of the value of the same, $2,500 worth and interest thereon. In that much the estate had no further interest. Its sole interest lay in its equity of redemption. The $2,500 debt and interest due thereon was not, and never could be, an asset of the estate, or any part of the estate.

VII. It is respectfully submitted that the supreme court can even now order the lower court to allow appellant to prove his claim. (*Estate of Hidden,* 23 Cal. 363.) That it is only necessary to apprise the administrator of the nature of the claim, and to state facts sufficient to constitute a bar to a recovery in another action in the presentation of claims against any estate. That the technical rules of common law pleading have nothing to do with the presentation of claims against estates. That a valid claim is a claim that is actually due. That all the right, title and interest an estate holds and owns in mortgaged property, and can dispose of, is its equity

of redemption—whether a mortgage is only a lien or not, and that mortgages are nothing but liens in every state in the Union, and must be foreclosed in order to obtain title by the mortgagee. That the estate of C. C. Powning, deceased, was not in the least prejudiced by the failure of plaintiff to attach his original note and mortgage to the claim as filed. That the reference to the book and page where said note and mortgage could be found was sufficient. (*Higley* v. *Pollock*, 21 Nev. 196.) That the law of 1897, calling for the attachment of the original note and mortgage to a claim, or certified copies, calls for additional evidence not called for at the time of the execution of the contract, and that the act should be liberally construed, to the end that justice may be done to all parties.

*A. E. Cheney* and *Oscar J. Smith*, for Respondent:

I. The respondent contends that no action can be maintained in the State of Nevada, against the representative of a deceased person, to foreclose a mortgage upon any property of the estate of such deceased, unless the claim sued upon has been presented to such representative within the time, and in the manner, provided by the statute for the settlement of the estate of deceased persons, even though the plaintiff in such foreclosure suit waives all claim against the estate, for any deficiency which may arise, after the sale of the mortgaged premises.

II. The statute for the settlement of the estate of deceased persons manifests in many ways that it was the intention of the legislature to give the representative of the deceased person possession and control of all the property of an intestate. This purpose and intention is shown by many of its provisions. These statutory provisions contemplate the complete possession and control, by the administrator, of all the property of the deceased, real and personal, incumbered and unincumbered, with full responsibility and accountability for its preservation and distribution. Any attempt, by an independent action, in the same or another court, or in the same or another county, to deprive the administrator of that possession, to determine the devolution of the title of the deceased therein, or to adjudicate the validity of a claim or lien of a

creditor against that property, except that such claim and lien has been first regularly presented for allowance and approval under the provisions of the probate act, destroys the exclusive jurisdiction vested in the district court of the county of decedent's residence, contravenes the provisions of the statute above cited concerning the possession and accountability of the administrator for all the property of the intestate, and impairs the purpose and efficiency of the probate act which imposes the right and duty of possession and control of the whole estate upon the representative of the intestate.

III.   It is confidently submitted that the legislative intention to require all the property of an intestate, which by law is authorized to be sold to pay *any* debt of the decedent, to be sold by the administrator, under the provisions of the probate act, is clear.   And, also, that the law contemplates that the proceeds of every such sale shall be brought into court, and distributed by the administrator, under the direction of the court, to the parties justly entitled thereto, in satisfaction of only *valid* claims against the estate, according to their respective priority, as established by law.   It is only by requiring all sales to be made under the direction of the probate court that the unity and object of this legislative system, for the settlement of the estates of decedents, can be preserved.

IV.   The power of the legislature to determine what shall constitute a claim against the property of a deceased person, or whether such property shall be subject to any of his debts whatever, is plenary.   Its authority to direct the method of ascertaining what shall constitute a *valid* claim against such property is equally ample.   With the policy of that act the courts are not concerned.   Its provisions are plain, their meaning apparent, their terms mandatory.   No reason is shown why their observance should not be required.

V.   It is no longer a debatable question, in this jurisdiction, that the decedent died seized of the title of all of his real estate, mortgaged as well as unmortgaged, and that the holder of the mortgage has no estate therein, other than a lien thereon as security for the payment of his mortgage debt.   The title and right of possession of mortgaged prem-

ises passes to the administrator just the same as it does to that of unincumbered real estate. The right, interest and estate of the intestate in mortgaged property is property, and constitutes assets of the estate. This property and asset the administrator must possess, must appraise, must preserve, and must account for, the same as other property of the estate, and the only lawful account which he can render therefor, is either that the decedent had no right, title, or estate therein, or that the administrator, under the direction of the court, has applied the same to the discharge of valid claims against the estate, or distributed the same to the persons lawfully entitled thereto. It is confidently believed that it would be no justification for the administrator, nor release of his official sureties, for him to report that property of the decedent had been taken from his possession, in satisfaction of demands against the intestate which were never presented or allowed by the administrator, or approved by the court, or established as valid claims against the estate of the intestate, in the only manner provided by law for determining their validity.

VI. If the policy of the law is to be considered, it is just as essential, in order to save useless costs and expenses, to require the presentation of secured and unsecured claims before suit may be brought thereon, and it is certainly desirable that the costs, commissions and expenses of advertising several sales be avoided, where every right can be preserved by one sale in a proceeding already commenced, either as to proof of debt or method of sale, is found in the law. The several provisions of the statute, heretofore cited, unmistakably demonstrate that the legislature has provided a complete, comprehensive, speedy and equitable plan and scheme for determining who are creditors of a deceased person, what property shall be sold to pay the debts, and who, alone, are entitled to have the proceeds of the sale applied to the satisfaction of their demands, and what, if any, preference they have in reference thereto.

VII. That this is an action upon a contract of the deceased, cannot be questioned. The judgment sought is upon a claim for money. "A mortgage to secure the payment of a debt is not the debt, but is only a security. It

does not pay the debt, nor change its nature." (*Mahoney* v. *Stewart*, 31 S. E. 385.) The plaintiff seeks by this action to do more than establish the debt. He desires to have execution, or its equivalent—an order of sale—and a judgment which will give him a priority of payment. Yet these are all effects which the statute unmistakably says shall *not* be given to any judgment against an estate upon any such claim.

VIII. The question here presented came before the Supreme Court of California twice, under statutory regulations similar to those of this state, and it was expressly decided, and reaffirmed after an elaborate argument and full consideration, that the due presentation of a debt secured by a mortgage to the representative of an estate for allowance is an essential prerequisite to the maintaining of any action thereon, although all claim against the estate, other than the mortgaged property, is expressly waived. (*Pitte* v. *Shipley*, 46 Cal. 157, 161; *Harp* v. *Calahan*, 46 Cal. 222, 232–233; *Adams* v. *Smith*, 19 Nev. 268; *Douglass* v. *Folsom*, 21 Nev. 445, 448.)

IX. It will be observed that similar rulings have been made in Florida and Texas. The reasons for contrary decisions in other jurisdictions is pointed out by Judge Woerner in his able and exhaustive work on the Law of Administration, viz.: That probate courts generally have no jurisdiction of actions to foreclose mortgages. (2 Am. Law of Adm., sec. 409.) While in this state the power to sell the mortgaged premises and apply the proceeds according to the respective rights and priorities—all that a court of equity could do in an independent action—is unquestionably given; and in addition the statute expressly includes mortgages as claims, which are to be presented, by directing that, if the claim is secured by a mortgage, it shall be attached and filed therewith.

X. What is alleged to have taken place before the judge, when he was considering plaintiff's claim, is entirely immaterial. No leave to amend the claim was asked or granted, and no showing made of any mistake or excusable neglect which would have justified granting leave to amend, even if it had been asked. What the purpose of the alleged offer

was, must rest in the breast of the person making it, for there is nothing showing that it was disclosed. The district judge, in his able and comprehensive opinion, completely answers this contention. The statute had forever barred plaintiff's claim before any attempt was made to cure the fatal error of the claim as presented, and, by that limitation, jurisdiction to amend it had become lost, even if any such power ever existed.

By the Court, MASSEY, J.:

The appellant instituted this action to foreclose a mortgage. A demurrer to the complaint was interposed and sustained, and a judgment rendered in favor of the respondent. The appeal is taken from the judgment and the order sustaining the demurrer.

The facts shown by the complaint are that C. C. Powning died intestate at Washoe county, Nevada, about the 4th day of November, 1898, leaving an estate therein; that on the 6th day of December, 1898, an order was made by the district court of said state in and for said county appointing the respondent administratrix of the estate of said decedent, and that on said day letters of administration were regularly issued to her as administratrix of said estate, and that ever since she has been and is the appointed, qualified, and acting administratrix of said estate; that on the 17th day of December, 1896, at said county of Washoe, the said C. C. Powning, deceased, executed and delivered his certain promissory note, bearing date of that day, to the appellant, by which he promised to pay appellant, on or before June 17, 1897, $2,500 at the banking office of the Washoe County Bank, with interest at the rate of 8 per cent per annum from date until paid, a copy of which note is fully set out; that to secure the payment of said principal sum and interest mentioned in said note the said Powning executed under his hand and seal, and delivered to the appellant, a mortgage bearing date of December 17, 1896, conditioned for the payment of said sum and interest, which mortgage was duly acknowledged and certified and recorded on the 19th day of December, 1896, in the office of the county recorder of Washoe county in Book M of Mortgages, page 537.

A copy of the mortgage, containing a description of the real estate covered thereby, with the indorsements thereon, is fully set out in the complaint.

It is further shown:

That there is due and unpaid to the appellant on said note and mortgage the principal sum and interest thereon at the specified rate, amounting to $400.

That on the 31st of December, 1898, and within the time allowed by law for the presentation of claims against the estate of said C. C. Powning, the appellant presented his said claim, duly verified, to the administratrix of said estate for allowance, and filed the same with the clerk of the court for the amount hereinbefore set forth.

That thereafter, and within the time allowed by law, the respondent considered said claim, and allowed the same by statutory limitation, and thereafter she notified appellant to be and appear before the judge of said court, and show cause why said claim should be allowed.

That, pursuant thereto, appellant appeared before said judge to show cause, as aforesaid, and offered said judge, sitting in chambers, the original note and mortgage hereinbefore set forth, for the purpose of attaching the same to said claim as filed. Counsel for respondent interposed no objection to said offer, and appellant left said original note and said original mortgage with the said judge for the purpose of attaching the same to said claim, and making the same a part thereof, and said judge retained said note and mortgage until the____day of June, 1899.

That on the 15th day of May, 1899, said judge considered said claim, and, while in possession of said note and mortgage, rejected the same.

That the claim presented is in the words and figures following: "In the Second Judicial District Court of the State of Nevada in and for Washoe County. In the Matter of the Estate of C. C. Powning, Deceased. Creditor's Claim. The undersigned, a creditor of the estate of C. C. Powning, deceased, presents his claim against the estate of said deceased, with the necessary vouchers for approval, to wit: Estate of C. C. Powning, deceased, to R. Kirman. To note and mortgage, dated Reno, Nevada, December 17th, 1896,

recorded December 19th, 1896, at 46 min. past 9 a. m., in Record M of Mortgages, page 537, records of Washoe county, Nevada, which note and mortgage is hereby referred to and made a part of this claim, $2,500; to interest on same to December 17, 1898, $400—total, $2,900."

To this claim there was attached the statutory affidavit. The appellant asks for a decree of sale of the land in the usual manner, the proceeds to be applied to the discharge of the amount due, and for the usual relief in proceedings of foreclosure, waiving recourse to any other property of said deceased other than the property described in the mortgage.

The important question to be considered is made by the claim of the respondent that no action can be maintained against the representative of a deceased person to foreclose a mortgage upon any property of the deceased, under the statutes of this state regulating the settlement of the estates of deceased persons, unless the same has been presented to such representative within the time and in the manner prescribed by said statute.

In support of this contention it is argued that the statute giving to the representative of a deceased person possession and control of all the property of the intestate, the right to maintain actions to recover the possession of all the real estate of the deceased, and damages thereto, the right to the rents, issues, and profits of the same, and the imposed duty to keep the same in reasonable repair, the duty to inventory and appraise all the estate of the deceased, and his many other duties regarding accounting, sale of property, order of the payment of debts, shows that such was the intention of the legislature in the passage of the act.

While the question is not a new one, and there seems to be some conflict in the decision of the question between the courts of the various states, such conflict doubtless arising from the form of the various statutes, or the language used therein, yet, so far as this court is concerned, because of the recent passage of the act regulating the settlement of estates of deceased persons, the question is comparatively new, and a just and reasonable determination involves the judicial construction of the act, aided, in some respects, by the opinions of other courts upon statutes in many points similar to

our own, where such opinions seem to be based upon sound logic and reason.

Briefly stated, by the requirements of said act "all persons having claims against the deceased" must within a certain time file the same, with necessary vouchers, with the clerk of the court; if the claim be not filed within the time specified, "it shall be forever barred."

It is further required that such claim shall be supported by affidavit, the form and contents of which are fully set out in the act. It is made the duty of the administrator within a certain time to endorse thereon his rejection or allowance of such claim, and within a limited time thereafter he is required to present all claims allowed by him to the district judge for his approval or rejection.

Quoting from the act, it is further provided that: "All claims, when approved by the judge, shall be ranked among the acknowledged debts of the estate, to be paid in due course of administration. If the claim be founded upon a bond, bill, note, or other instrument, the original instrument need not be filed, but a copy with the indorsements may be attached to the statement of the claim and filed therewith, and if the claim be secured by mortgage or other evidence of lien, it shall, or a certified copy from a record, be attached to the claim and filed therewith." (Comp. L. 1900, secs. 2893–2896.)

A mortgage is something more than a "claim against the deceased." It is a lien upon the specific property described therein, carying with it the right, in case of default, of action to foreclose, and by such proceedings have applied to its discharge the proceeds arising from the sale of the specific property.

The district judge acting in probate matters under the sections above cited has no power or authority to determine the question of the validity or invalidity of the lien of the mortgage, or to make any decree or order for the sale of the mortgaged premises upon the presentation of the claim as defined in the statute. His allowance or rejection of the claim does not determine the validity of the lien created by the mortgage. It is not sufficient to say that the act prescribing the order of the payment of the debts of the

decedent confers authority upon the district judge to determine in this manner the validity of the mortgage lien.

The statute makes a distinction between liens of mortgages and "claims against deceased persons."

"If the claim be founded upon a bond, bill, note, or other instrument, the original instrument need not be filed, but a copy with all indorsements may be attached to the statement of a claim and filed therewith, and if the claim be secured by mortgage or other evidence of lien, it shall, or a certified copy from a record, be attached to the claim and filed therewith." (Comp. L. 1900, sec. 2896.)

That the legislature did not intend that the rights of the mortgagee and the validity of the mortgage lien should be determined in the summary manner prescribed by the statute is not only apparent from these provisions of the act, but also from the subsequent section providing that, when any sale is made by an administrator, pursuant to the provisions of this act, of land subject to any mortgage which is a valid claim against the estate of the deceased, the purchase money shall be applied, after paying the necessary expenses of the sale, first to the satisfaction of the mortgage, and the residue in due course of administration; and such application shall be made without delay, and the land shall remain subject to such mortgage until the purchase money shall have been actually so applied; and that no lien against any estate shall be affected by the statute of limitations pending the proceedings for the settlement of such estate. (Comp. L. 1900, sec. 2943.)

It seems to us that the language used in this section, taken in connection with the language used in the sections above quoted, is conclusive of the question. It preserves, in direct terms, the lien of a mortgage upon the land sold until the proceeds arising from such sale have been actually applied to the discharge of the mortgage lien. It has been claimed that the words "valid claim," used in the last section, must be held to mean a claim against the deceased which has been duly presented in the manner required by the provisions heretofore cited.

We are not disposed to give to the words used the strained and technical construction contended for, in view of the fur-

ther provision of the same act requiring that it shall be liberally construed, to the end that justice may be done all parties. (Comp. L. 1900, sec. 3055.) The legislature, by the use of the words "valid claim against the estate of the deceased," construed with the other language used in the same section, clearly intended that lands sold by the administrator, which were justly chargeable with the payment of a mortgage lien, should be subject to sale divested of such lien only upon the actual application of the proceeds as specified.

By this provision valuable property charged with such liens may be used for the purposes of administration without impairing any of the rights of the mortgagee.

To place a different construction on the statute requires that we should not only ignore the last clause contained in the section, which declares that "no lien against any estate shall be affected by the statute of limitation pending the proceedings for the settlement of such estate," but must hold, in direct contravention thereof, that the failure of the mortgagee to present his lien within a few days after notice of appointment or failure to sue upon the same within a few days after presentment and notice of rejection shall operate as a perpetual bar to any action to enforce the same.

We have examined a large number of cases decided by the courts of other states.

Woerner, in his work on the American Law of Administration, correctly states the general rule, as we believe, governing the majority of these cases. He says: "Actions to foreclose mortgages or to enforce other collateral securities or liens are distinct from the allowance of the debts so secured; and since, generally, probate courts have no jurisdiction of such actions, the limitations and conditions imposed on the parties enforcing the payment of simple debts against executors or administrators are not applicable. Thus, mortgages or vendors' liens may generally be foreclosed without having proved the debt in the probate court, or making the affidavit of claimants presenting demands against administrators, or proceeding within the time required for the presentation of claims against deceased persons; nor, on the other hand, does the probate of the claim affect the holder's right of foreclosure. For the same

reason the right of foreclosure gives the holder no remedy against the general assets of the estate, and does not give such a claim a preference thereto, and his claim in this respect for any deficiency is barred like any other claim, unless he presents the same in proper time." * * * (Woerner, Admn. 409; 8 Am. & Eng. Enc. Law, 2d ed., 1070. See, also, authorities cited in footnotes to text of the above authorities.)

The Supreme Court of Washington, discussing the same question, under a statute with provisions similar in many respects to our own, says: "As to the first objection raised by the defendant, we think that the plaintiff's rights, under his mortgage, as to the lands mortgaged, were not barred by a failure to present his claim secured thereby to the executrix; that the failure to present his claim would only operate to prevent him from making any deficiency that might remain after exhausting the mortgaged property out of the testator's other estate." (*Scammon* v. *Ward* (Wash.), 23 Pac. 439.)

It is necessary to notice briefly one other question raised. It is claimed that the facts shown by the complaint do not constitute a sufficient filing or presentment of a claim to save the bar of that provision of the act which declares that no holder of any claim against an estate shall maintain any action thereon unless it shall have been first filed, and under the conditions specified. (Comp. L. 1900, sec. 2899.)

The point of this contention is that a strict compliance with the provisions of this section requires that the appellant should have attached copies of the note and mortgage to his claim, or the statement thereof, as provided for by section 2896, *supra*.

This contention is correct if we are required to construe the words " may " and " shall," used in the last clause of said section 2896, as mandatory.

We do not believe it was intended that the language should be given such construction.

Taking the language of sections 2803 and of 2896, and we are of the opinion that it was the manifest intention of the legislature that formal and technical pleading should not be required in the presentation of claims; that the court should

investigate these claims in a summary manner without pleadings that required the skill and learning of an attorney at law in their preparation; that by such procedure expense and delays to both claimants and the estate should be avoided.

"This act shall be liberally construed, to the end that justice may be done all parties, and a speedy settlement of estates at the least expense secured," is the declaration of said section 3055, and, if this statutory rule is to be applied to any of the provisions of the act, it seems most appropriate to apply it to those sections regulating mere matters of pleading, and not of substantive law.

We are of the opinion that a claim, or statement of a claim, properly verified, which shows the nature and character and amount of the same, and the liability of the estate of the decedent, and, if there is future litigation as to the fact of presentment, it can be distinguished from all other similar claims, and is sufficient to bar another proceeding upon it, is a sufficient compliance with the terms of these sections of the statute when given the liberal construction of the statutory rule above quoted.

Of the authorities from the courts of other states examined, the following decisions of the Supreme Court of Alabama are cited, and are, as we believe, considered with the provisions of the statute of that state regulating the settlement of estates of deceased persons, based upon sound reason. (*Flinn* v. *Shackleford,* 42 Ala. 202; *Bibb* v. *Mitchell,* 58 Ala. 657; *Agnew* v. *Walden,* 84 Ala. 502.)

Quoting from the opinion in *Flinn* v. *Shackleford, supra,* Mr. Justice Byrd, speaking for the court, says: " The code declares that ' all claims against the estate of a deceased person must be presented within eighteen months after the same have accrued or within eighteen months after the grant of letters testamentary or administration; and if not presented within that time are forever barred.' *  *  *  The statute previous to the adoption of the code was, in substance, upon this subject, the same as the above provision. This court has long held that under this statute it is not necessary for the claimant to present the original claim to the executor or administrator in order to hold them liable, and the presen-

tation of a copy or abstract, or even notice given of the claim, with the assertion of the liability of the estate, and that he looked to the executor or administrator for payment, would be sufficient.  *  *  *  The code also provides that every person having any claim against an estate which has been declared insolvent must file the same in the office of the judge of probate within nine months after such declaration, or after the same accrues, verified by the oath of the claimant, or some other person who knows the correctness of the claim, and that the same is due, or the same is forever barred."

The court in this case, discussing the construction to be placed upon this provision of the statute relative to the filing of claims against estates declared to be insolvent, further on in the same opinion, uses the following forceful language: "Such a ruling preserves the analogies which should be observed in the construction of statutes which are *in pari materia.* Besides, too rigid a rule should not be enforced against parties in a court which has no technical rules established for its proceedings, and which looks to the substantial administration of justice and equity without being held down to the strict rules of the courts of common law."

Our statute regulating this matter also seems to be in harmony with the following rule, tersely stated in the 8th Am. & Eng. Enc. Law, 2d ed., 1077: "In presenting claims against the estate to the probate court, or by filing the claim in the office of the probate judge, no formal complaint is necessary. All that is required is that the statement show the nature and amount of the claim with sufficient precision to bar another action, and show also a *prima facie* right to recover."

There is also one other view to be taken of the matter. It is shown by the complaint that the statement of the claim filed within the statutory time was allowed by operation of the original provisions of section 2896, *supra,* by the failure of the administratrix to indorse her allowance or rejection of the same. (Stats. 1897, p. 136, sec. 111.)

It is further shown that thereafter the appellant was notified to appear and show cause before the district judge why said claim should be allowed, and that he appeared

before said district judge, and before said claim had been rejected by him, and offered to attach the original note and mortgage to the statement of the claim, and left said note and mortgage with the said district judge for the purpose of having the same attached; that thereafter the district judge rejected the claim, and, it seems, returned to the appellant the original note and mortgage.

While, as above stated, it was the manifest intention of the legislature to dispense with formal and technical pleadings in the presentation of claims against deceased persons, yet it did, in its wisdom, enact as a part of the law regulating these matters that, when appropriate, or the same may be applied as auxiliary to the provisions of the act, and when not otherwise especially provided in the act, all the provisions of the law regulating proceedings in civil cases shall apply in matters of estate. (Comp. Laws, 3067.)

Under the authority of this provision we are unable to understand why, before the final rejection of a claim by the district judge, and even after the time within which a claimant is allowed to file a claim against the estate of deceased persons, the claimant should not be permitted, in furtherance of justice, under the declared rule of the civil practice act, to amend his claim as to any technical matter which does not substantially change the nature and character of the same.

While we have been unable to find, after diligent search, any authority directly in point, yet such an application of the rule seems to be justified by the provisions of the statute, and its application cannot operate to harm or injure any person interested in the estate.

This rule as to the right to amend seems to be supported by the decisions of the Supreme Court of the State of California and the Court of Appeals of the State of Colorado, and we have not been able to find any authority or decision which conflicts with it. (*In re Sullenberger's Estate*, 72 Cal. 549; *Dickey* v. *Dickey*, 8 Colo. App. 141.)

If, then, the right to amend exists, as suggested above, may not the averments of the complaint be sufficient to justify the court in holding that the statement of appellant's claim was amended by attaching the original note and mortgage thereto?

It is hardly necessary to discuss the objection raised by

the respondent that the point of the exception to the order sustaining the demurrer to the complaint is not stated.

If the rule of the statute announced in *McGurn* v. *McInnis*, 24 Nev. 370, 55 Pac. 304, could have any application to the record in the case at bar, it would be sufficient to say that the statement containing the complaint, demurrer, order of the court sustaining the demurrer, and decision thereon constituting the record on appeal, very clearly shows the point of the appellant's exception.

For the reasons above given, the judgment and order appealed from will be reversed, and the cause remanded for further proceedings in accordance herewith.

### UPON PETITION FOR REHEARING.

By the Court, MASSEY, J.:

The respondent urges in her petition for rehearing, in effect, that, having adopted the provisions of the probate act of California as it existed prior to 1876, we must, under the settled rule of construction, also adopt the construction placed upon those provisions by the court of that state, and cites authorities in which the Supreme Court of California has held contrary to the rule announced by this court.

We considered the California cases cited, but did not deem it necessary to discuss them, as our act of 1897 and the subsequent amendments thereto contained provisions, not found in the California act, which we believe warranted us in holding as we did.

An examination of the California act reveals the fact that it contains no direct statutory rule of construction, as is found in our probate act.

It will also be observed that section 148 of the California act forbade the sale of any property of the estate of a deceased person, unless made under an order of a probate court, and under the provision of the act, while section 124 of our act (Comp. L. 1900, sec. 2909), which corresponds with the said section 148 of the California act, not only makes valid sales of such property under the provisions of the act, but "other acts," also. A marked difference exists between the provisions of section 157 of our act (Comp. L. 1900, sec. 2943), cited in the opinion, and the provisions of the corre-

sponding section of the California act relating to the sale of
lands by the executor or administrator subject to mortgage
or other lien, the application of the proceeds arising there-
from, and the bar of the statute of limitations pending pro-
ceedings for the settlement of the estate.   That section of the
California act found in volume 2 of the Codes and Statutes
of California (1876, sec. 11,569) contains language not found
in section 157 of our act, limiting the provision of the section
to mortgage or other liens which have been presented and
allowed.

Other differences having a direct bearing upon the con-
struction of the statute might be noted, but, being fully satis-
fied that the differences between the provisions of our act and
the California act are so marked that the rule relied upon by
the respondent cannot be properly applied to the question
considered, and following the established rule that in statu-
tory construction the court will look to the statutes and the
language used therein, in order to ascertain the true mean-
ing and intent thereof, we are fully convinced that the
decision heretofore announced, determining the rights of the
parties under the facts of the record, is amply supported by
the provisions of our statute.

The petition for a rehearing will therefore be denied.