THE STATE OF MONTANA EX REL. R. C. WALLACE ET AL., RELATORS *v.* THE STATE BOARD OF EQUALIZATION OF THE STATE OF MONTANA, RESPONDENT.

[Submitted September 9, 1896. Decided September 28, 1896.]

TAXATION—*State Board of Equalization—Power to raise valuation—Constitutional law—* Under section 15, Article XII of the constitution, designating the officers who shall constitute the State Board of Equalization and providing that the duty of the board shall be "to adjust and equalize the valuation of the taxable property among the several counties of the state," such board has no power to increase the total valuation of the property of the state as disclosed and fixed by the abstracts and statements transmitted to it by the assessors and county boards of equalization.

ORIGINAL PROCEEDING.—Application for a writ of *certiorari* to review the action of the State Board of Equalization, consisting of the governor, secretary of state, state treasurer, state auditor and attorney general, in increasing the total val-

uation of property returned to it by the assessors and county boards of equalization of the several counties.

Statement of the case by the justice delivering the opinion.

The relators are resident taxpayers in the state of Montana. The respondent, the State Board of Equalization, is composed by law of the state officers above named. It is charged in the application of relators that the respondent at its session held under the law at the state capital, in July last, assumed to exercise and did exercise the power to adjust the taxable property of the several counties of the state as to the valuation thereof among the several counties of the state, and made certain changes and increased in the valuation and assessment of the real and personal property as returned and transmitted by the assessors and county boards of equalization of the several counties, which said changes and increases are specifically set forth in relator's application, and that by reason of such changes and increases the respondent increased the valuation and assessment of divers classes of property in the several counties of the state, and that by reason of such changes and increases said board increased the aggregate total of all the values of property in the several counties of the state from the sum of $111,084,350, which was the total value of property as disclosed by the abstracts and statements transmitted to and received by said board from the county boards of equalization and assessors, to the sum of $114,231,730.04 which was an aggregate increase of the total assessed valuation of all the property in the several counties of the state, as shown above, of $3,147,370.04. The facts as alleged in the application are not denied by respondent's return.

*Carpenter & Carpenter* and *Toole & Wallace*, for Relators.

*Henri J. Haskell*, Attorney General, for Respondent.

PEMBERTON, C. J.—The principal question presented for adjudication is as to the power of the State Board of Equal-

ization under our constitution to so increase the valuation of property returned to it by the assessors and county boards of equalization of the several counties as to increase or decrease the total valuation of property of the state as fixed by the county boards and assessors. The relators contend that under the constitution of the state the respondent board had no power to make such change and increase in the total valuation of the property of the state. Sec. 15, Article XII, of our constitution is as follows:

"The governor, secretary of state, state treasurer, state auditor and attorney general shall constitute a state board of equalization, and the board of county commissioners of each county shall constitute a county board of equalization. The duty of the state board of equalization shall be to adjust and equalize the valuation of the taxable property among the several counties of the state. The duty of the county boards of equalization shall be to adjust and equalize the valuation of taxable property within their respective counties. Each board shall also perform such other duties as may be prescribed by law."

We have been unable to find a constitutional provision exactly like ours in any of the states. The constitution of the state of Colorado contains provisions upon this subject so nearly like ours that it may be fairly claimed that they are *substantially* the same. In fact it seems from their substantial similarity that our state may be said to have adopted the Colorado constitution upon this subject. Sec. 15, Article X, of the Colorado constitution is as follows:

"There shall be a state board of equalization consisting of the governor, state auditor, state treasurer, secretary of state and attorney general; also in each county of this state, a county board of equalization, consisting of the board of county commissioners of said county. The duty of the state board of equalization shall be to adjust and equalize the valuation of real and personal property among the several counties of the state. The duty of the county board of equalization shall be to adjust and equalize the valuation of real and personal property within

their respective counties. Each board shall also perform such other duties as may be prescribed by law."

It will be observed that the only difference in the phraseology of the two constitutional provisions quoted is found in the use of these words: Where our constitution uses the words "taxable property," the Colorado constitution uses the words "real and personal property." The supreme court of Colorado in *The People ex rel. Crawford* v. *Lothrop*, 3 Col. 428, an elaborate and well considered case, involving the powers of the state board of equalization under the provision of the constitution just quoted, said:

"The purpose of the creation of this board is imported in its title; its duties, as stated in terms in the constitution, are to '*adjust* and *equalize* the valuation of real and personal property among the several counties of the state.' Perfect equality in the assessment of taxes is unattainable, approximation to it is all that can be had.

The object of the provision is to apportion as equitably as may be the burthen of the state government among the several counties, to prevent a disproportionate share of the state tax from being thrown upon any county or counties by reason of the action of the local assessors. The grossest inequality might prevail in the valuations in the different counties, and possibly with reference to escaping a fair proportion of the state tax, and without a power lodged somewhere to adjust and equalize the several county valuations, the greatest injustice might be done and there would be a practical annulment of the constitutional provision that 'all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax.' It was to meet this difficulty and accomplish this end that the state board of equalization was created with powers to *adjust* and *equalize*."

The court then proceeds to discuss the duties and powers of assessors and county boards of equalization under the constitution and laws of Colorado, which are very similar to ours, and say:

"Section 38 (General Laws, p. 754) provides that the county

commissioners of each county shall constitute a board of equalization for the correction and completion of the assessment rolls, with power to supply omissions in the assessment rolls, and for the purpose of equalizing the same, to increase, diminish or otherwise alter and correct any assessment or valuation. It provides in case of change of the assessment of any taxpayer, that he shall be notified and have a hearing before the board. It constitutes them a *quasi* court to hear any and all complaints of the taxpayer touching the valuation or listing of his property, with full power to adjust and correct the assessment roll as in their judgment they may deem proper and right, thus adding statutory duties to their constitutional duties ' to adjust and equalize.' Other sections of the law might be cited, but those mentioned suffice for our purpose. We find here a complete system with well defined and minutely prescribed rules and regulations guarding the property right of the citizen; guarding equally the revenue necessities of the state, acting through the instrumentalities of owners and the assessors chosen by the electors of the several counties listing, valuing and returning taxable property under the sanction of an oath, with the board of county commissioners acting as a board of appeal and review, all for the one purpose of ascertaining, determining and fixing the value of taxable property in each county of the state as a basis of taxation. The statute provides for the transmission of these assessment rolls of the county to the board of equalization and contemplates that one assessment shall be made for both state and local taxes.

"The only exception to this that we find is the express provision for the assessment of railroad property by the state board of equalization. For this, in the opinion of the legislature, there was, doubtless, an obvious necessity and authority, found in the last clause of section 15, article X of the constitution, which provides that the board shall perform such other duties as shall be prescribed by law. The assessor is thus made an integral part of the revenue system which not only thus specifies and defines his duties, but assigns to other officers and

boards equally well-defined and separate duties. The assessor shall list and value. The board of commisioners shall equalize, adjust, increase and diminish, supply omissions and correct errors and hear complaints. The county clerk shall prepare assessment rolls and compute and extend the tax therein. The state board of equalization shall adjust and equalize valuations, and lastly, the county treasurer shall collect the tax. In seeking for legislative intent, reference must be had not only to the form and phraseology of the particular section under consideration; but any part must be viewed in connection with the whole, so as, if possible, to harmonize and give effect to the whole.

"Looking then to the provisions of the constitution and the statute, we are clearly of the opinion that the power to fix and determine the valuation of taxable property is lodged by them in the assessor and the board of county commissioners of the several counties of the state, and that when they have under the law performed this duty and exercised this power, that the sum of the valuations of the several counties so by them found must be taken as the aggregate valuation of all the property in the state, and is conclusive and final as against the state board of equalization. The state board may, for the purpose of adjusting and equalizing, increase the aggregate valuation of one county, and decrease the aggregate valuation of another, but they have no power to increase the sum of all the valuations of the several counties of the state. The aggregate valuation has been found for them, and fixed by the authority and in the mode prescribed by law. This view is not only sanctioned by the force of the general provisions of the statute considered as a whole, but also by the phraseology of the sections under consideration. The board is to adjust and equalize the valuation: This term *valuation* here imports values already estimated and fixed and must be referred for the measure of its force and meaning to the mode prescribed by law for estimating and fixing valuations. The aggregate material with which the board can deal is thus limited; they may adjust and equalize it among the several counties, but they cannot add to its volume."

Section 9, article XII of our constitution is as follows : "The rate of taxation of real and personal property for state purposes in any one year shall never exceed three (3) mills on each dollar of valuation; and whenever the taxable property in the state shall amount to one hundred million dollars ($100,-000,000), the rate shall not exceed two and one-half (2½) mills on each dollar of valuation; and whenever the taxable property in the state shall amount to three hundred million dollars ($300,000,000), the rate shall never thereafter exceed one and one-half (1½) mills on each dollar of valuation; unless a proposition to increase such rate specifying the rate proposed and the time during which the same shall be levied, shall have been submitted to the people at a general election, and shall have received a majority of all the votes cast for and against it at such election."

Section 11, Article X of the Colorado constitution reads as follows : "The rate of taxation on property, for state purposes, shall never exceed six mills on each dollar of valuation; and whenever the taxable property within the state shall amount to one hundred million dollars, the rate shall not exceed four mills on each dollar of valuation; and whenever the taxable property within the state shall amount to three hundred million dollars, the rate shall never thereafter exceed two mills on each dollar of valuation, unless a proposition to increase such rate, specifying the rate proposed, and the time during which the same shall be levied, be first submitted to a vote of such of the qualified electors of the state as in the year next preceding such election shall have paid a property tax assessed to them within the state, and a majority of those voting thereon shall vote in favor thereof, in such manner as may be provided by law."

Commenting on this section of the constitution of Colorado, the supreme court in the case of *Crawford* v. *Lothrop, supra,* says : "If this claim of power on behalf of the state board to increase the valuation be admitted, why limit in the constitution the per cent. that it may levy ? It matters little whether the limitation be one mill or ten, if increase of valua-

tion be unrestrained. Limited upon the one hand, it is unlimited upon the other. We may neither calculate its extent nor challenge its pretensions. Over five million dollars increase this year—it may be over fifty million dollars increase the next.

"Under this construction of the statute the efforts of the people to establish and maintain legitimate restraints on the power to tax will have been unavailing, and the checks and guards which they have embodied in their constitution to that end, cease to be of practical force or value. The spirit of the law and not 'the letter which destroys' must prevail. We cannot believe that any such grant of power to the state board of equalization was within the intent of the legislative authority.

"We are, therefore, of the opinion that the board of equalization in making the increased valuation acted without authority of law, and that their action in this respect is void."

These comments by the Colorado court upon the constitutional restrictions placed upon the powers of the state board of equalization of that state apply with exactness and force to our constitution and the powers of the respondent board thereunder. We think the authority quoted above is absolutely decisive of the case at bar.

We, therefore, are of the opinion that the respondent board in increasing the total valuation of the property of the state as disclosed and fixed by the abstracts and statements transmitted to it by the assessors and county boards of equalization, acted without authority and that its action in this respect was and is wholly void.

Having reached this conclusion upon the main question involved in the case, we deem it unnecessary to pass upon the power of the respondent board to increase or decrease the valuation of any specific class or classes of property from that fixed by the county boards and assessors, as shown by the county abstracts and statements transmitted to the state board. It may not be out of place, however, to say that we think the weight of authority is decidedly against the exercise of such right or power by the state board. (*Crawford* v. *Lothrop,*

*supra*; *Wells, Fargo & Co.* v. *The State Board of Equalization*, 56 Cal. 194; *St. Joseph Lead Co.* v. *Simms*, 108 Mo. 222.)

It is therefore ordered that the proceedings of the state board of equalization be annulled as prayed for in the application of relators.

DE WITT and HUNT, JJ., concur.