[Civil No. 927.  Filed January 20, 1906.]

[84 Pac. 511.]

In the Matter of the Application of the COPPER QUEEN CONSOLIDATED MINING COMPANY, a Corporation, for a Writ of Certiorari, Petitioner, v. THE TERRITORIAL BOARD OF EQUALIZATION OF THE TERRITORY OF ARIZONA, Composed of Wesley A. Hill et al., Respondent.

1. STATUTES—ADOPTED FROM ANOTHER STATE—PREVIOUS JUDICIAL CONSTRUCTION.—Where a legislature adopts a statute from another state, it will be presumed to have adopted with it the judicial construction given it by the court of last resort of that state prior to the adoption, except where it makes such changes of phraseology as necessitate a change of construction.

2. TAXES AND TAXATION—TERRITORIAL BOARD OF EQUALIZATION—JURISDICTION—INCREASE OF AGGREGATE VALUATION—REV. STATS. ARIZ. 1901, PARS. 973 (SUBD. 14), 3836, 3847, 3861, 3868, 3877, 3879, 3880, CONSTRUED.—Paragraphs 3836, 3847, and 3861, *supra,* provide that the various county assessors must, in the first instance, assess the property in the various counties to its individual owners at its cash value, and place these assessments upon the assessment-roll. Subdivision 14 of paragraph 973, *supra,* authorizes the county board of supervisors (as county boards of equalization) to equalize assessments. Paragraph 3868, *supra,* empowers the county board of equalization to add to or deduct from any valuation, whether fixed by the owner or the assessor. Paragraph 3877, *supra,* requires the clerks of the boards of supervisors to make abstracts of the assessment-rolls, showing the quantity of the various kinds of property by classes, and the total assessed valuation of each class, in their respective counties, and transmit the same to the territorial board of equalization, and further authorizes the territorial board of equalization to diminish or add to the list of classes of property therein provided, and to require such different or further matters to be returned as it may deem advisable. By paragraph 3879, *supra,* the territorial board of equalization is required "to examine the various assessments so far as regards the territorial tax, and equalize the rate of assessment in the various counties." Paragraph 3880, *supra,* provides: "The said board shall ascertain whether the valuation of property in each county bears a fair relation or proportion to the valuation in all the counties of the territory, and on such examination they may increase or diminish the valuation of property in any of the counties as much as in their judgment may be necessary to produce a just relation between all the valuations of property in the territory. But in no instance shall they

reduce the aggregate valuation of all the counties below the aggregate valuation as determined by the boards of supervisors of the several counties.'' Under these provisions the territorial board of equalization has the power to raise the valuation of property in any county so as to produce a just relation between the valuation of property in the territory, notwithstanding that by so doing it may increase the aggregate valuation of all property in the territory.

3. Same—Same—Same—Increase of Valuation by Classes. — The territorial board of equalization, for the purpose of producing a just relation among all the valuations of property in the territory, so far as regards the territorial tax, has the power to increase or diminish the valuation of property in any county by classes.

4. Statutes—Practical Construction—Evidence—Judicial Notice. —The court will take judicial notice of the long-continued interpretation amounting to a practical construction given by a territorial board of equalization to statutes controlling its action.

5. Statutes—Construction—Practical.—Where the meaning of a statute is in doubt, such doubt will be resolved in favor of a long-continued practical construction by the board executing it.

6. Taxes and Taxation—Assessment—Territorial Board of Equalization—Powers—Rev. Stats. Ariz. 1901, pars. 973, 3835, 3849, 3861, 3877, Construed.—Under paragraph 973, *supra,* conferring upon the board of supervisors supervisory control over assessing officers, and general legislative authority as to matters within their jurisdiction; paragraph 3835, *supra,* defining land; and expressly excluding unpatented mines; paragraph 3849, *supra,* requiring the owner of land, except town or city lots, in returning his property, to describe it by section or part of section, township, and range, and where such part of section is not a legal subdivision, or is unsurveyed, by some other description sufficient to identify it; paragraph 3861, *supra,* requiring the assessor in preparing the tax-list to put down therein all real estate, described by metes and bounds or by common designation or name; and paragraph 3877, *supra,* requiring the county board of supervisors to make abstracts of the assessment-rolls showing the various kinds of property by classes, and to transmit the same to the territorial board of equalization, which may diminish or add to the list classes of property therein provided, and require such different or further matters to be returned as it may deem advisable,—the territorial board of equalization is authorized to require the county boards of equalization to make return, as a distinct class, of patented mines, or of any other subclassification of real estate appearing upon the assessment-rolls.

7. Same—Same—Same — Review — Presumptions. — The petition for writ of *certiorari* to review proceedings of territorial board of equalization disclosing that the territorial board of equalization treated patented mines as a distinct class of lands, it must be

assumed, in the absence of a contrary averment, that the assessment-rolls of the various counties furnished the necessary information, in the first instance, and that the boards of supervisors, from the information thus afforded, returned to the territorial board patented mines as a distinct class of real estate.

CAMPBELL, J., and DOAN, J., dissenting.

Original Petition for Writ of Certiorari. Demurrer to the amended application for the writ, sustained.

Affirmed. Opinion, 206 U. S. 474, 51 L. Ed. 1143.

The facts are stated in the opinion.

Herring and Sorin, for Petitioner.

The territorial board of equalization in performing the acts alleged and complained of in the application exceeded its jurisdiction.

1. The territorial board of equalization is wholly the creature of the statute, and has no power or authority except that which is expressly conferred by statute. The statute having specified what they may do, necessarily excludes every other power. It is essential to the validity of its acts that they should be authorized by some express provision of the statute. *Orr* v. *State Board of Equalization*, 3 Idaho, 190, 28 Pac. 416; *Central Pacific Ry. Co.* v. *Evans*, 111 Fed. 79; *State* v. *Central Pacific Ry. Co.*, 21 Nev. 172, 26 Pac. 225, 1109; *City of Lowell* v. *Commissioners of Middlesex*, 3 Allen, 550; *State* v. *Central Pacific Ry. Co.*, 9 Nev. 79; Lewis's Sutherland on Statutory Construction, 536, 537.

In the case of *City of Lowell* v. *Commissioners of Middlesex*, 3 Allen, 530, the supreme court of Massachusetts held that the county commissioners are not constituted a tribunal with authority to adjust equities between parties arising out of the abatement of taxes, and that inasmuch as no provision of law gave to the party whose tax was abated the right to recover interest on the sum which he receives back in consequence of such abatement, the county commissioners had no authority to allow such interest, and *certiorari* would lie to quash the proceeding.

2. The only powers in relation to the equalization of prop-

erty which are conferred by our statute upon the territorial board of equalization are those expressly conferred by paragraphs 3879 and 3880 of Revised Statutes of Arizona of 1901.

These provisions were enacted and adopted from the Colorado statute after an interpretation thereof by the court of last resort in that state. The presumption is therefore that our legislature designed to adopt the interpretations previously given to the law in Colorado. *Goldman* v. *Sotelo,* 7 Ariz. 23, 60 Pac. 696, 8 Ariz. 85, 68 Pac. 558; *Henrietta Mfg. Co.* v. *Gardner,* 173 U. S. 123, 19 Sup. Ct. 327, 43 L. Ed. 637; *Richmond etc. R. R. Co.* v. *Tobacco Co.,* 169 U. S. 311, 18 Sup. Ct. 335, 42 L. Ed. 759; *Métropolitan R. R. Co.* v. *Moore,* 121 U. S. 558, 7 Sup. Ct. 1334, 30 L. Ed. 1022.

The supreme court of Colorado decided the case of *People* v. *Lothrop,* 3 Colo. 428, in 1877. In that case the court, in construing a statute almost identical with our own, held that the state board of equalization has no power to increase the sum of all the valuations of the several counties of the state as fixed and determined by the assessor and boards of the several counties, and that *mandamus* would not lie to compel the clerk of the county to place upon the assessment-roll of the county the changes made by the state board, where the latter, in making such changes, had increased the sum of the aggregate valuations of the several counties of the state. *People* v. *Lothrop,* 3 Colo. 428. The supreme court of Colorado has affirmed this decision in a recent case. *People* v. *Ames,* 27 Colo. 126, 60 Pac. 346. See, also, *State* v. *Fortune,* 24 Mont. 154, 60 Pac. 1086; *State* v. *Equalization Board,* 18 Mont. 473, 46 Pac. 266.

In *Poe* v. *Howell,* (N. Mex.) 67 Pac. 62, a similar construction was given to the statute of New Mexico, and the authorities last above cited approved.

The sum of all the valuations of the several counties as fixed and determined by the assessor and the board of equalization of the several counties of the territory must be taken as the aggregate valuation of all the property in the territory, and it is conclusive and final as against the territorial board of equalization. The power of the latter board is limited to *adjusting and equalizing.* To this end it may increase the aggregate valuation of one county and decrease the aggregate valuation of another, but in so doing it has no power

to increase the sum of all the valuations of the several counties of the territory. Cases cited, *supra.*

Our statute gives the territorial board of equalization the power to equalize, but not to reassess. To the point that the former does not include the latter, we cite the case of *Hacker* v. *Howe,* (Neb.) 101 N. W. 255, decided November, 1904, in which the court says: ''Concerning the contention that the state board in respect to the action taken did not equalize but reassessed the property of the several counties, raising the aggregate valuation thereof according to the percentage applied to each county, it may be said that manifestly the board has no power to increase valuations merely for the purpose of making such increase. The limitations of law relative to tax-levies, the fixing of valuations, and the equalization thereof cannot be nullified and rendered impotent by an attempt to increase the aggregate of the grand assessment-rolls under the guise of equalization. . . . The state board does not deal with individual assessments, but with the property of the county as a whole, and if it appears to them to be assessed at a valuation relatively lower or higher than the property in all other counties, the whole is effected by the order of equalization and not the different items or classes. Individual discrepancies and inequalities the law contemplates shall be corrected and equalized by the county authorities.'' *Hacker* v. *Howe,* (Neb.) 101 N. W. 255, 260, 261.

E. S. Clark, Attorney-General, for Respondent.

NAVE, J.—The Copper Queen Consolidated Mining Company made application that a writ of *certiorari* should be issued out of this court by an associate justice thereof, directed to the territorial board of equalization, requiring that board to certify certain records to this court, and to show cause why certain acts and proceedings complained of in said application should not be declared void and vacated. Upon the application, on September 22, 1905, a writ was issued by one of the associate justices, returnable before the full bench of this court on the seventeenth day of November, 1905. On November 16, 1905, petitioner filed in this court its amended application for a writ of *certiorari.* The board of equalization made return in compliance with the writ, but interposed a demurrer to the amended application. By con-

sent of the parties, expressed in open court, the right of the petitioner to the writ was argued before the full bench upon this demurrer. Therefore, we may with propriety consider the questions raised by demurrer as if no writ had been issued, and determine whether upon the facts set forth in the amended application, thus conceded to be true, the petitioner is entitled to relief.

The salient facts alleged in the application are that the petitioner is the owner of real and personal property situated in Cochise County; that at a session of the territorial board of equalization on the seventeenth day of August, 1905, that board, while having under examination the various assessments and abstracts of assessment-rolls returned to it from the various counties of the territory, and under consideration the question whether the valuation of property in each county bears a fair relation or proportion to the valuation in all other counties of the territory, did, for the alleged purpose of equalizing the rate of assessment in the various counties, add to the assessed valuation of patented mines in said county of Cochise for the year 1905, fifteen hundred per cent thereof, which was an increase of $3,345,277.05; similarly, did add to the valuation of work-horses in said county nineteen per cent thereof, to the valuation of saddle-horses thirty-one per cent thereof, to the valuation of improvements on unpatented mines one thousand per cent; that the said board similarly increased the assessed valuation of some special class or classes of property in each and every county of the territory; that thereby the aggregate valuation of property in each and every county of the territory was increased over and above the aggregate valuations of property therein, as fixed by the respective assessors and boards of equalization of the said counties for the year 1905. These increases in aggregate valuations are set forth in the petition in a table showing increases ranging from $81.87 in Coconino County, to $3,370,216.60 in Cochise County, and showing that the aggregate increased valuation of property in the territory for purposes of taxation of the same, was $9,554,060.29 over and above the sums of the aggregate valuations of the several counties therein, as fixed for the year 1905 by the assessors and boards of equalization of the respective counties and returned to the territorial auditor in the abstracts of assessment-rolls of said counties. Petitioner

further shows, that the increased valuation of petitioner's property resulting from the act of the territorial board of equalization is $847,951.

It is contended by the petitioner that the territorial board of equalization, in performing the acts alleged, exceeded its jurisdiction for two reasons: 1. The board of equalization has no power to increase the sum of all the valuations of the several counties of the territory, as fixed and determined by the assessors and boards of the several counties; and 2. The board has no authority to raise or diminish the valuations placed upon different classes of property in any county. At the threshold of the consideration of this case, we meet the contention on the part of the petitioner that the statutes conferring the authority upon the territorial board of equalization, under which it assumed to act, were adopted from the statutes of Colorado; that, in the case of *People* v. *Lothrop,* 3 Colo. 428, these statutes had received an interpretation from the court of last resort of that state, prior to their adoption by the legislature of the territory of Arizona, and that this interpretation was to the effect that under these statutes the state board of equalization of Colorado had no power to increase the sum of all the valuations of the several counties, as fixed by the assessors and boards of equalization of the several counties; but that this sum must be taken as the aggregate valuation of all the property in the state, and is conclusive and final as against the said board of equalization. If this contention is well founded, this demurrer must be overruled; for under such circumstances it will be presumed that the legislature of Arizona adopted the statute of Colorado with the interpretation given to it in that state. *Henrietta Mining Co.* v. *Gardner,* 173 U. S. 123, 19 Sup. Ct. 327, 43 L. Ed. 637; *Goldman* v. *Sotelo,* 8 Ariz. 85, 68 Pac. 558.

It appears that paragraphs 3877 and 3879 of the Revised Statutes of 1901 (which are a re-enactment of paragraphs 2655 and 2657 of the Revised Statutes of 1887) are in large portion, if not in all material points, identical respectively with paragraphs 2279 and 2281 of the General Laws of Colorado of 1877. Paragraph 3880 of the Revised Statutes of 1901 (a re-enactment of paragraph 2658 of the Revised Statutes of 1887) is the particular paragraph which we must interpret, and is as follows:—

"3880 (Sec. 50). The said board shall ascertain whether the valuation of *property* in each county bears a fair relation or proportion to the valuation in all other counties in the territory, and on such examination they may increase or diminish the *valuation* of *property* in any county, as much as in their judgment may be necessary to produce a just relation between all the valuations of *property* in the territory; but in no instance shall they reduce the aggregate valuation as returned by the boards of supervisors of the several counties. And said board shall at the same time fix the rate of taxes for territorial purposes which is to be levied and collected in each county."

Paragraph 2282 of the General Laws of Colorado of 1877, from which it is contended that we adopted the paragraph just set out, is as follows:—

"2282 (Sec. 43). Said board shall ascertain whether the valuation of *real estate* in each county bears a fair relation or proportion to the valuation in all other counties of the state, and on such examination they may increase or diminish the *aggregate* valuation of *real estate* in any county, as much as in their judgment may be necessary to produce a just relation between all the valuations of *real estate* in the state; but in no instance shall they reduce the aggregate valuation of all the counties below the aggregate valuation as returned by the clerks of the several counties."

The material differences in phraseology of the two paragraphs we have indicated by italics.

While the rule as to the adoption with an adopted statute of a prior interpretation is as set forth above, "of course a change of phraseology which necessitates a change of construction will be deemed as intended to make a change in the law." *McDonald* v. *Hovey,* 110 U. S. 619, 4 Sup. Ct. 142, 28 L. Ed. 269. This latter doctrine is pertinently applied in the cases of *Stutsman County* v. *Wallace,* 142 U. S. 293, 12 Sup. Ct. 227, 35 L. Ed. 1018; *Swofford etc. Co.* v. *Mills,* (C. C.) 86 Fed. 556; *Kirman* v. *Powning,* 25 Nev. 378, 61 Pac. 1090. It is to be noted that the Colorado statute provides: "Said board shall ascertain whether the valuation of real estate in each county bears a fair relation," etc., and that "they may increase or diminish the aggregate valuation of real estate in any county"; while the Arizona statute pro-

vides: "Said board shall ascertain whether the valuation of property in each county bears a fair relation," etc., and that "they may increase or diminish the valuation of property in any county." In the Arizona statute the word "property" appears where the words "real estate" appear in the Colorado statute; and the word "aggregate," which appears in the Colorado statute, does not appear in the Arizona statute. While, by reason of this difference, the meaning of the Arizona statute does not necessarily differ from that of the Colorado statute with reference to the power of the territorial board of equalization to increase the sum of the valuations of the several counties as fixed by the county officers, there is nevertheless a very material difference in the meaning of these statutes in other respects. In view of this difference, we do not feel constrained to follow the interpretation given to the Colorado statute, even conceding, by force of the identity of large portions of the other Arizona and Colorado statutes to which reference is made, and by reason of the general similarity of phraseology of the two paragraphs set forth above, that the laws of Colorado were before the legislature of Arizona when the Arizona statutes in question were enacted, and supplied a considerable portion thereof. Furthermore, a careful examination of the case of *Bell* v. *Lothrop, supra,* discloses that the language of the statute in question was not construed. The controlling factor in the conclusion reached in that case was a provision of the constitution of Colorado. While a board of equalization is limited to the exercise of those powers only which are clearly conferred upon it by law, and while it would make no difference in the determination of the extent of such powers whether they are conferred by statute or by constitution; yet, on the other hand, statutes cannot confer power upon public officers if that power is restricted by constitutional provision. Therefore, the statutes of Colorado could not confer powers upon the state board of equalization which by a reasonable construction and application of the constitution of Colorado that board could not exercise. The supreme court of Colorado could not construe the constitution and statutes together, so as to arrive at a reasonable construction of the law, but were under necessity, first, to interpret the constitution; and then to hold the statutes to be limited by the constitution, no matter how much

broader in their scope the statutes would be, if not so limited. In the interpretation of the Arizona statutes, there are no constitutional limitations to be taken into consideration. We are not only at liberty to, but must, interpret all of the Arizona statutes bearing upon the power of the board of equalization in such wise as to give effect to the evident intention of the legislative power. The supreme court of Colorado could not give effect to the evident meaning of the legislature, if the legislature meant to confer more power upon the state board of equalization than was authorized by the state constitution.

The Colorado constitution provided: "The duty of the state board of equalization shall be to adjust and equalize the valuation of real and personal property among the several counties of the state. The duty of the county board of equalization shall be to adjust and equalize the valuation of real and personal property within the respective counties." These provisions of the Colorado constitution have not been adopted into the statutes of Arizona, and, moreover, if so adopted, would not control or limit the interpretation of other statutes of Arizona; but all the statutes would be interpreted in such wise as to give effect to the intention of the legislature, if that could be determined. That the supreme court of Colorado interpreted constitutional provisions, and that the statutes were limited by this interpretation, is manifest from the opinion of that court. The court say: "Section 38 (Gen. Laws 1877, p. 754) provides that the county commissioners of each county shall constitute a board of equalization for the correction and completion of the assessment-rolls, with power . . . for the purpose of equalizing the same, to increase, diminish, or otherwise to alter and correct any assessment or valuation. . . . It constitutes them a *quasi* court to hear any . . . complaints of the taxpayer . . . with full power to adjust and correct the assessment-roll; . . . thus adding statutory duties to their constitutional duties to adjust and equalize. . . . The assessor is . . . made an integral part of the revenue system, which not only . . . specifies and defines his duties, but assigns to other officers a number of equally well-defined and separate duties. The assessor shall list and value; the board of commissioners shall equalize, adjust, . . . and hear complaints; . . . the state board of equalization shall adjust and equalize valuations. . . . Look-

ing, then, to the provisions of the constitution and the statute, we are clearly of the opinion that the power to fix and determine the valuation of taxable property is lodged by them in the assessors and boards of the county commissioners of the several counties in the state; and when they have performed this duty, the sum of the valuations of the several counties so by them found, must be taken as the aggregate valuation of all the property in the state, and is conclusive and final as against the state board of equalization. The state board may for the purpose of equalizing or adjusting, increase the aggregate valuation of the county and decrease the aggregate valuation of another, but they have no power to increase the sum of all the valuations of the several counties of the state." *People* v. *Lothrop,* 3 Colo. 428.

These provisions of the constitution of Colorado were adopted into the constitution of Montana. In interpreting them, the supreme court of Montana, in *State* v. *State Board,* 18 Mont. 473, 46 Pac. 266, after quoting from the decision of the supreme court of Colorado above cited, say: "These comments by the Colorado court upon the constitutional restrictions placed upon the powers of the state board of equalization of that state, apply to the enactments to-day in force, of our constitution." The same court (*State* v. *Fortune,* 24 Mont. 154, 60 Pac. 1087) say: "The learned attorney-general cites sections 3690, 3800-3802, of the Political Code, as conferring upon the state board of equalization authority to do that which it attempted to accomplish; but statutes cannot clothe the state board with powed denied to it by the fundamental law." Brantly, C. J., concurring specially, said: "I concur solely on the ground of *stare decisis.* If the question involved were a new one in this state, I should be in favor of disregarding the construction given to the section of the constitution by the supreme court of Colorado in *People* v. *Lothrop,* 3 Colo. 428, and followed by this court in *State* v. *State Board, supra,* as demonstrably wrong." Our legislature is not limited by constitutional restrictions upon the power which it may give to the territorial board of equalization. Furthermore, we have not adopted as a statute the provision of the constitution of Colorado, making it the duty of the county board of equalization "to adjust and equalize the valuation of real and personal property within the re-

spective counties.'' The supreme court of Colorado seem to have interpreted that language as limiting the power which may be conferred upon the state board. Whether the interpretation is correct or incorrect, it is an interpretation of language not in our statutes. Therefore, in no aspect of that case, are we concluded by the decision there reached.

With respect to the particular point now under consideration, our statutes do not seem difficult of interpretation. The various county assessors must, in the first instance, assess the property in the various counties to its individual owners, at its cash value, and place these assessments upon the assessment-roll. Rev. Stats. 1901, pars. 3836, 3847, 3861. The duties of the boards of supervisors (as county boards of equalization) are described as follows: ''To equalize assessments.'' Rev. Stats. 1901, par. 973, subd. 14. ''Said board shall have power to determine whether the assessed value of any property is too small or too large, and it may change and correct any valuation, either by adding thereto or by deducting therefrom, if, in its judgment from the information then possessed by it, the value fixed in the assessment-roll is too small or too large, whether such value was fixed by the owner or by the assessor; and if the board shall believe it to be right to add to the assessed value of any property, it shall cause this fact to be inserted in the advertised notice hereinafter provided to be given; but no assessment can be raised by the board unless it is included in such advertised notice.'' Rev. Stats. 1901, par. 3868. Thus it is perceived that the county assessors and the boards of supervisors concern themselves with the assessments to individual taxpayers. When the assessors and supervisors have performed their duties, the clerks of the boards of supervisors must make abstracts of the assessment-rolls, showing the quantity of the various kinds of property by classes, and the total assessed valuation of each class, in their respective counties, and transmit the same to the territorial board of equalization. Rev. Stats. 1901, par. 3877. By this paragraph, the territorial board of equalization is authorized to diminish or add to the list of classes of property therein provided, and to require such different or further matters to be returned as it may deem advisable. By paragraph 3879, this board is required to ''examine the various assessments, so far as regards the territorial tax, and equalize

the rate of assessment in the various counties whenever they are satisfied that the scale of valuation has not been adjusted with reasonable uniformity by the different assessors and [county] boards of equalization.'' Paragraph 3880 provides: ''The said boards shall ascertain whether the valuation of property in each county bears a fair relation or proportion to the valuation in all the counties of the territory, and on such examination, they may increase.or diminish the valuation of property in any of the counties, as much as in their judgment may be necessary to produce a just relation between all the valuations of property in the territory.'' The extent of this power seems to us so clear and unequivocal as to require but little interpretation. Arizona has thirteen counties. If, in the judgment of the board of equalization, the assessed valuation of property in one of these thirteen counties does not bear a fair relation of proportion to the valuation in the other twelve counties, if the valuation in the twelve counties is a correct one, and if the valuation in the one county is in unfair relation or proportion, by reason of its being too low, is it inferable, or even reasonably arguable, from the provisions of. these statutes, that the board cannot raise the valuation of property in the one county to such rate as to produce a just relation between all the valuations of property in the territory, because thereby the aggregate valuation of all property in the territory is increased? It seems to us clear from the language of the statute, in the portion quoted, that the board of equalization has the power, and it is its duty,· to increase or diminish valuations of property in any county without reference to the question whether thereby the total valuation of all property in the territory is increased or diminished. To limit this construction, however, the legislature added to this paragraph the provision: ''But in no instance shall they reduce the aggregate valuation of all the counties below the aggregate valuation as determined by the boards of supervisors of the several counties.'' This limitation certainly does not imply that the board may not raise such aggregate valuation, but, rather, strongly implies the contrary.

In opposition to this view, we are cited to a number of decisions, distinguishable, in the main, in the terms of the statutes interpreted. A case not thus to be distinguished is that of *Poe* v. *Howell,* (N. Mex.) 67 Pac. 62. This is not a

decision of an appellate, but of a *nisi prius* court, and has therefore less weight as authority. An examination of the case discloses that the territorial board of equalization of New Mexico had "increased the value of improved real estate and all stocks of merchandise in incorporated villages, towns, and cities, 10 per cent, and all stocks of merchandise outside of incorporated villages, towns, and cities, 15 per cent of the said valuation thereof, as fixed and returned by the several county assessors," in every county in the territory. The New Mexico statute gave this board power "to adjust and equalize the assessment-roll by raising or lowering the values thereof, so that the same shall be of uniform value throughout the territory." A horizontal raise in the same percentage of all property in the same class, in all counties, left the property, as regards uniformity of assessment, precisely as it was before the raise. Therefore, the facts before the district court in that case were in no wise similar to the facts before us. In many expressions in the opinion of the district judge, not necessary to his conclusion in the case, we do not concur. The opinions of the supreme court of Montana, in the two cases of *State* v. *State Board,* 18 Mont. 473, 46 Pac. 266, and *State* v. *Fortune,* 24 Mont. 154, 60 Pac. 1086, from which we have already quoted, are cited by petitioner, but are inapplicable for the same reason that *People* v. *Lothrop,* hereinbefore considered at much length, is not applicable. The Montana cases rest upon the Colorado case. The territorial board of equalization of Arizona did not exceed its jurisdiction, by reason of the fact that the effect of its action is to increase the aggregate valuation of all the property in the territory.

The second contention is that the board of equalization exceeded its jurisdiction by increasing the assessments upon certain classes of property within the various counties. It is insisted that the board must act upon the aggregate valuation of all property in each county as a whole; that it must be assumed that the taxes have been equitably and uniformly levied among the various taxpayers within the county, and among the various classes of property in the county. This is a very plausible theory, but overlooks that very weakness of human nature which our tax system, with its various devices looking toward the procuring of uniformity, expressly recog-

nizes. The functions of the county boards of supervisors, as county boards of equalization, are based upon the recognized fact that county assessors cannot be relied upon invariably to assess individual taxpayers with uniformity. The appeal provided for from the county boards of equalization to the district court discloses the knowledge of the legislative mind that the county boards of equalization may do injustice in their assessments upon individual taxpayers. The direction to the territorial board of equalization to ascertain whether the valuation of property in the county bears a fair relation to the valuation in all other counties in the territory discloses a like knowledge that there may be an unfair relation which some functionary should attempt to rectify. Finally, when all the machinery of the law has been called into operation, the result is far from uniformity of taxation, either as among the counties, among the classes of property, or among the individual taxpayers. The legislature seem to us to have recognized that, due to local conditions, cattle might be assessed in one county at three dollars per head, and might be assessed in another county ten dollars per head, and yet be of the same actual value in each county. If in Cochise County all property, except cattle, should be assessed at the same relative valuation as in other counties, and cattle should be assessed at but one half of their true relative valuation, Cochise County would, unless some remedy were applied, bear a less share of the territorial taxes than it ought. Under the contention of petitioners, a raise in the assessed valuation of all the property in Cochise County must be made, which would thus result in imposing upon all property-owners of that county except cattle-owners the payment of taxes above their fair proportion, and the payment of taxes on an assessed valuation higher than the valuation on the same property in all other counties of the territory. The supreme court of New Mexico had recently before it this question, in the case of the *Territory* v. *Bank*, 10 N. Mex. 283, 65 Pac. 173. In an opinion which we think well reasoned and well expressed, the evil of such a construction as contended for by petitioners, and the soundness of a contrary construction are pointed out by the court in that case. We do not overlook the decisions in numerous cases cited to us holding that similar boards may not lawfully raise or diminish valuations by classes of prop-

erty. We have examined those cases, but find that they construe statutes differing so widely from ours that they afford us but little aid in the interpretation of our statutes. We think a fair and reasonable interpretation of our statutes discloses the intention of the legislature to confer upon the territorial board of equalization, for the purpose of producing a just relation among all the valuations of property in the territory, so far as regards the territorial tax, the power to increase or diminish the valuation of property in any county by classes. At most, it can be urged only that, from the language used, a doubt exists as to such intention. Were such doubt well founded, we should feel constrained to follow the long-continued interpretation given by the territorial board of equalization to the statutes in harmony with this view. For eighteen years, ever since its creation, that board, without question from any source, and upon the advice of numerous attorneys-general, has raised and lowered valuations of property within the several counties of this territory, by classes. This court will take judicial notice of this practical construction. *Bloxham* v. *Consumers' Electric R. R. Co.,* 36 Fla. 519, 18 South. 444, 29 L. R. A. 507, 51 Am. St. Rep. 44. We are not bound to be ignorant of that which every intelligent taxpayer in Arizona knows. *State* v. *Kelly,* 71 Kan. 811, 70 L. R. A. 450, 81 Pac. 450.

This construction of these statutes by the board on whom was imposed the duty of executing them, would resolve such a doubt in favor of that construction. *United States* v. *Finnell,* 185 U. S. 236, 22 Sup. Ct. 633, 46 L. Ed. 890; *Schell* v. *Fauche,* 138 U. S. 562, 11 Sup. Ct. 376, 34 L. Ed. 1040; *United States* v. *Alabama, G. S. R. Co.,* 142 U. S. 615, 12 Sup. Ct. 306, 35 L. Ed. 1134; *United States* v. *Philbrick,* 120 U. S. 52, 7 Sup. Ct. 413, 30 L. Ed. 559. In construing the intent of the legislature, it is a significant fact that with such long-continued construction by such officials before it, the legislature, in its revision of the law in 1901, re-enacted the provisions without substantial change. In argument it was contended that, assuming that the territorial board of equalization in equalizing the rate of assessment in the various counties is not restricted to an increase or decrease of the sum of the valuations of property in each county, but may equalize valuations by classes of property, nevertheless, the

board is confined to the classifications made by paragraph 3877; that the provision in said paragraph that the territorial board of equalization may diminish or add to the list given, and may in its discretion require different or further matters to be returned, must be construed as applying to property which does not fall within any class specifically mentioned. This contention is especially urged with respect to any subclassification of lands, for the reason that, by paragraph 3849, the owner of land, except town or city lots, is required in returning his list of property to describe the same by section or part of section, township, and range, and where such part of section is not a legal subdivision, or is unsurveyed, by some other description sufficient to identify it; and that it is further provided by paragraph 3861 that the assessor in preparing the tax-list or assessment-roll shall put down therein all real estate taxable to each inhabitant, firm, incorporated company, or association, described by metes and bounds, or by common designation or name; if situated within the limits of any city or incorporated town, describing by lots or fractions of lots; if situated without such limits, giving the number of acres as nearly as can conveniently be ascertained, and the location and township where situate. It was contended that no authority is found in these provisions of the revenue act for the listing of land in such a way that its character may be determined, either by the assessing officers of the county, or by the territorial board of equalization, so as to permit of any subclassification for the purpose of equalization. Conceding for the argument that the requiring in certain instances of a listing of real estate by "some description sufficient to identify it," and its description "by common designation or name," does not go so far as to require a description from which a subclassification of lands as mineral or non-mineral may be made, certainly we see nothing to prohibit extending upon the assessment-roll the description of land beyond that required in the statute, so as to designate its particular character, nor reason why, if such designation appears to have been made uniformly throughout the territory, a classification based thereon may not be made for the purpose of equalization. Furthermore, we find in the provisions of paragraph 973, conferring upon the board of supervisors supervisory control over assessing officers, and general legislative authority as to matters

within their jurisdiction, sufficient power for them to require the assessor to note upon the assessment-roll, in which of various ascertainable classes each piece of land falls. Patented mines are readily ascertainable as such. Such classification in fact depends merely upon the description of the land as mineral, for by paragraph 3835 land is defined as expressly excluding unpatented mines.

Therefore, we construe the provision in paragraph 3877, authorizing the territorial board of equalization to diminish or add to the classifications specifically mentioned, as conferring upon said board authority to require the county boards of equalization to make return as a distinct class of patented mines, or of any other subclassification of real estate appearing upon the assessment-rolls. The petition discloses that the territorial board of equalization treated patented mines as a distinct class of lands. Therefore, we must assume, in the absence of a contrary averment, that the assessment-rolls of the various counties furnished the necessary information in the first instance, and that the boards of supervisors, from the information thus afforded, returned to the territorial board patented mines as a distinct class of real estate. There was further suggested as an objection to the action of the board a matter which seems to us not to be within the record as made by the application and demurrer,—this is, that the board seeks to require the county officers to adopt for the purposes of county taxes the changes in valuations made by it. It may be said to appear inferentially in the application that the county of Cochise is proposing to collect county taxes upon the valuations as raised by the territorial board of equalization. Be this as it may, the sole question before us is whether the territorial board exceeded its jurisdiction, and not whether some other board or officer is unlawfully extending the lawful order of that board. It does not appear, even inferentially, that the territorial board has undertaken to make a change in valuations for any other purpose than, in the language of the statute "as regards the territorial tax," nor does it appear that this board has sought to direct the carrying into effect of the changes made by it for any other purpose. By reason of the scope covered in argument, and the close relation existing between this case and the *mandamus* suit of the *Territory of Arizona* v. *Board of Supervisors of Yavapai County* (pre-

sented in oral argument with this case), *post,* p. 405, 84 Pac. 519, it is appropriate to point out that we are limited to determining the legal effect of the facts as presented in the amended application.  We have to determine only the question whether the territorial board of equalization has jurisdiction in the lawful exercise of its powers for the purpose of equalizing valuations in the several counties to raise or diminish· valuations of property by classes, and whether, as an incident to such equalization, it may increase the aggregate of the valuations of property in the territory.  The record does not present the question raised in the *mandamus* suit, whether the method employed by the board in the exercise of such power was legal.

The question as to the jurisdiction of the board we answer in the affirmative.  The demurrer to the amended application for· writ of *certiorari* is sustained, and the writ heretofore issued is quashed.

KENT, C. J., and SLOAN, J., concur.

CAMPBELL, J., dissenting.—I am unable to concur in that portion of the opinion of the majority of the court which holds that the territorial board of equalization has power to increase or decrease valuations of classes of real estate, other than by those classes expressly recognized by the statutes.

The application for the writ discloses that the board added to the assessed valuation of patented mines as a distinct class of property.  Looking to the statutes to ascertain the classifications of property recognized therein for purposes of taxation, we find, first, the general classification into real and personal.  Rev. Stats. 1901, par. 3831.  By paragraph 3835 each of these two general classes is defined; the term "real estate" being declared "to mean and include the ownership of, or claim to, or possession of, or right of possession to, any land within the territory"; the term "personal property" to mean and include all property not included in the term "real estate."  Paragraph 3836 provides: "Land, and the improvements thereon, shall be separately assessed."  By paragraph 3848 it is made the duty of every person owning or having the control of taxable property to make a list of the same, and deliver it to the assessor.  Paragraph 3849 provides: "The

said list shall contain, first, his lands by section, or part of section, township, and range, and where such part of section is not a legal subdivision, or is unsurveyed, some other description sufficient to identify it, and his town lots, naming the town in which they are situated, and their proper description by number of lot or block, or otherwise, according to the system of numbering in the town; second, the improvements on all such land and town lots; third, his personal property of every description, or property held by him or under his control as an agent, or in any fiduciary capacity.'' Paragraph 3861 makes it the duty of the assessor to prepare an assessment-roll, and prescribes what it shall contain: He must set down in a separate column ''all real estate taxable to each inhabitant, firm, incorporated company, or association, described by metes and bounds, or by common designation or name, if situate within the limits of any city or any incorporated town, describing by lots or fractions of lots; if without said limits, giving the number of acres as nearly as can conveniently be ascertained, and the location and township where situate; all improvements upon public lands, describing as nearly as possible the location of such improvements.'' Thus, we find that the legislature has classified real estate for the purposes of taxation, as follows: Town or city lots, improvements thereon, land outside of towns and cities, improvements thereon, improvements on public lands; and nowhere in the statutes are taxpayers, assessors, or boards of supervisors required, either in express terms, or, as I can perceive, by reasonable inference, to make or to enter upon the assessment-rolls further or different classifications. Their full statutory duty is performed when they have placed upon the roll real estate and valuations, classified as the statute directs. For the use of the territorial board of equalization, the clerks of the county boards of equalization are required by paragraph 3877 each to ''make an abstract containing the whole number of acres of land, other than town or city lots, listed in the county, and the valuation thereof, and the value of the improvements thereon; the total valuation of town or city lots, and the value of the improvements thereon; the whole number of miles of railroad within the county, and the value thereof''; and the whole number of horses, asses, cattle, sheep, swine, and goats, with their respective total values; ''the gross amount

of all other property." And by the same paragraph it is provided: "But the territorial board of equalization is authorized to diminish or add to the above list, and to require such different or further matters to be returned as it may deem advisable." It will be observed that paragraph 3877 preserves the classification of real estate heretofore indicated.

The majority of the court seem to rest the power of the territorial board to increase or decrease valuations by subclasses of real estate upon two propositions: 1. That there is no prohibition upon the assessors extending upon the rolls the description of land beyond that required in the statute, so as to designate its particular character, and, therefore, having done so, the board may act upon such subclassification; and 2. That they find authority in paragraph 973 for the boards of supervisors to require assessors to subclassify real estate upon the rolls, and in paragraph 3877 power in the territorial board to require the county boards to make return as a distinct class of any subclassification appearing upon the assessment-rolls. I can see no force in the first contention. It is leaving to the various assessors to say upon what subclassifications the territorial board shall act. Next year they may choose to do only what the law requires of them,—place upon the assessment-rolls lands outside of cities and towns by acres, without reference to whether they are cultivated or grazing, mineral or non-mineral. The clerks of county boards of equalization can only abstract what the rolls contain. Therefore, the territorial board cannot under such conditions know from the abstracts that there are any mineral lands in the territory. I think I may without impropriety use for purposes of illustration an allegation appearing in the petitions for writs of *mandamus* now pending in this court, involving the proceedings of the territorial board. It appears that for the year 1905 but two of the assessors of the various counties placed upon the assessment-rolls as a separate class improvements upon patented mines. It is a notorious fact that such improvements exist in nearly, if not all, of the counties of the territory,—a fact that is probably within the personal knowledge of every member of the board of equalization; yet the assessors were clearly within the law in returning them simply as improvements upon land, and the board prevented from equalizing such assessments in the various counties.

Conceding, as found by the majority of the court, that the supervisors may require the assessors particularly to describe upon the rolls the character of lands, it would seem to be a discretionary power. It is reading too much into the statute to say that paragraph 3877 gives the territorial board supervisory power over the county boards in the exercise of their duties regarding the preparation of tax-rolls. I construe the provision, "but the territorial board of equalization is authorized to diminish or add to the above list, and to require such different or further matters to be returned as it may deem advisable," to empower the board only to require the clerk of the county board to abstract by classes the property included within "the gross amount of all other property." I do not understand the majority opinion to hold that the territorial board may require the county boards to require assessors to so describe lands upon the assessment-rolls that they may be subclassified, but only to hold that, the assessors having so described it, the territorial board may require the county boards to abstract the information the rolls contain. This leaves the territorial board without power to cause the information to be placed upon the rolls, should the boards of supervisors not choose so to direct the assessors. What we are seeking is the true intent and meaning of the legislature, and surely it cannot be said that the legislature meant to leave the territorial board, in the exercise of such important powers, dependent upon the will of the various boards of supervisors. The power to classify personal property to some extent is expressly given. The owner of taxable personalty is required to describe it to the assessor; and from the provisions of paragraph 3877 the duty of the assessor to describe it on the assessment-roll by classes is clearly inferable. It may be doubted, however, whether he is required to subclassify, for instance, horses, as work, saddle, and range. Upon this I do not think it necessary to express an opinion.

For the reasons indicated I am of the opinion that the demurrer to the application should be overruled.

DOAN, J.—I am unable to concur with my associates in the interpretation given the statutes in this case. I think the writ was properly issued, and the demurrer should be overruled. I agree substantially with the views expressed by Mr. Justice Campbell herein.